Stanley Jay **SHERIDAN**, Appellant,

v.

Russella Suzanne **SHERIDAN**, Appellee.

No. 1120.

Supreme Court of Alaska.

March 20, 1970.

Helen L. Simpson, Anchorage, for appellant.

Herbert A. Ross, Anchorage, for appellee.

Before DIMOND, RABINOWITZ, BONEY, and CONNOR, JJ., and FITZGERALD, Superior Court Judge.

OPINION

RABINOWITZ, Justice.

Appellant Stanley Sheridan sued his wife Russella for divorce on the grounds of incompatibility of temperament. Appellee Russella Sheridan counterclaimed for divorce also asserting the existence of an incompatibility of temperament. Both parties sought custody of the three young children of the marriage. Later the parties entered into a stipulation under the terms of which appellee's pleadings were amended to include allegations that she was then "pregnant with another child" by appellant. It was further stipulated that appellant disputed the paternity of the as yet unborn child.

After trial the lower court entered a partial decree of divorce, reserved decision on the paternity, child custody, and property division issues, and ordered an investigation and report to be made by the Department of Health and Welfare. Subsequent to the receipt of the Department of Health and Welfare's report, the superior court entered findings of fact and conclusions of law. In its decree, the trial court awarded appellee custody of the children; ordered appellant to pay $75 monthly for the support of each minor child of the parties; to pay the $163 monthly installments due on the parties' home; and further or-

dered that the $10,000 equity of the parties in the home was to be divided equally.[1]

In this appeal, appellant contends that the trial court erred in awarding custody of the three minor children to appellee because of her immoral conduct, her unsatisfactory conduct toward her children, her perjury, and her prior abandonment of the children. Appellant further argues that the trial court committed error in awarding the children to appellee, whom the court itself considered to be the less fit. In regard to the property provision and support aspects of the decree, appellant takes the position that the court was mistaken in awarding half of the parties' property to appellee, and in requiring appellant to pay child support, make house payments, and pay all of the then existing family debts.

Only brief reference is required to the property issues raised in this appeal.[2] Alaska's Code of Civil Procedure establishes that as part of any judgment in an action for divorce the trial court may provide

> for the division between the parties of their property, whether joint or separate, acquired only during coverture, in the manner as may be just, and without regard to which of the parties is in fault;
> * * *[3]

Concerning the trial court's distributive powers in divorce actions, we have held that this subject is a matter left by statute to the broad discretion of the trial court and will not be disturbed on appeal unless an abuse of such discretion is shown. To establish an abuse of discretion, the aggrieved party must show that the property division was clearly unjust.[4] Review of the record has not convinced us that the trial court's division of the parties' property was clearly unjust in any respect. We therefore affirm the property division which was decreed by the lower court.[5]

Turning to the more troublesome question of custody of the three minor children, the relevant portions of the record disclose the following:

Appellant Stanley J. Sheridan was 42 years old at the time of trial; had worked in construction at various geographic locations for approximately 20 years; and married appellee Russella in May of 1959. Two daughters, Holly and Heather, and one son, Philip, were born of this marriage.[6] In appellant's opinion, appellee Russella was unfit to have custody of the children because she was "short" with the

1. In the decree appellee and the three children were granted the right to continue living in the home. Sale of the home was to take place in the event appellee discontinued living there.

2. At oral argument counsel for appellant conceded that the primary issue in the case at bar was the superior court's resolution of the custody issue.

3. AS 09.55.210(6).

4. Crume v. Crume, 378 P.2d 183, 186 (Alaska 1963). See also Houger v. Houger, 449 P.2d 766, 771 (Alaska 1969); Groff v. Groff, 408 P.2d 998, 1001 (Alaska 1965); McSmith v. McSmith, 387 P.2d 454, 455 (Alaska 1963).
   The factors which are considered relevant in deciding questions relating to the division of property were alluded to in Merrill v. Merrill, 368 P.2d 546, 547–548 n. 4 (Alaska 1962). There it was stated that the principal factors to be considered by the trial court are:
   [T]he respective ages of the parties; their earning ability; the duration and conduct of each during the marriage; their station in life; the circumstances and necessities of each; their health and physical condition; their financial circumstances, including the time and manner of acquisition of the property in question, its value at the time and its income producing capacity if any.

5. Subsequent to oral argument, appellee moved this court to affirm the property division provisions of the decree. Appellant had no objection to the motion and on February 24, 1970, an order was entered affirming the property division.

6. At the time the trial took place in June of 1968, the oldest child, Holly, was six and one-half and the youngest, Philip, was three and one-half.

children; could not dress them without shaking and jerking them; screamed at and used profanity towards them; and exhibited a great deal of tension toward the children, as a result of which the children had become nervous and tense.

Appellant further testified that on two prior occasions appellee had filed suit for divorce.[7] Prior to the commencement of the third action for divorce (the case at bar), appellee and the three children joined appellant in Okinawa where the latter was then employed in construction work. According to appellant, after three months together in Okinawa appellee left without the children and returned to Anchorage to live with a lover. At the time appellee left for Anchorage, she told appellant that she would sue for divorce and that the children would be his. While appellee was in Okinawa, the children became nervous and cried all the time because of their mother's conduct. After appellee left Okinawa, appellant took sole care of the children for a period of nine months. Appellant returned to Anchorage with the children in November 1967, at which time appellee asked appellant to let her move back in with the family because she was "sick and tired of being alone and * * * was thinking about suicide. [That] she was broke and needed help." Appellant further testified that after his return to Anchorage appellee admitted that she had lived with one man in Anchorage and had had affairs with five other men. During the first week after his return from Okinawa, appellee informed appellant that she was pregnant. This revelation ultimately led to the stipulation mentioned above. Prior to the entry of the trial court's final decree, the parties entered into a second stipulation under the terms of which the paternity issue of appellee's fourth child was settled. Pursuant to this stipulation, it was established that appellant could not have been the father of this fourth child.

Appellee Russella Sheridan testified to the following: At the time of trial, she was 34 years old and had completed two years of college education at Ohio Wesleyan University, one year at Boston University night schools, and one year full time at Boston University. From the inception of their married life appellant and appellee had encountered problems. Stanley left her for a few days when they were first married, and she left him several times since then. In appellee's view, they lacked a satisfactory social life and only had a few close friends; her husband's life revolved around bars; and the nature of her husband's occupation necessitated frequent location changes in Alaska which placed great strain upon her. Appellee also complained that her husband continually harassed her about money matters and her irresponsibility in regard to the handling of money.

Russella's version of why she left Okinawa without the three children differs from appellant's. She claims her failure to take the children back to Anchorage with her came about because appellant drove her out of their home in Okinawa, accused her of having an affair with one Neil Fisher, and kept the children's passports from her, thus preventing her from taking the children with her. Appellee admitted she had an affair with Neil Fisher.

Only one other witness appeared before the trial court. Mrs. Naidine Johnson testified that she had known appellee for two and one-half to three years, appellee was a "wonderful" mother who spent countless hours with her children, was a good housekeeper and cook, and that the three children loved her. After the taking of testimony was concluded, the trial court ordered an investigation to be undertaken by the Department of Health and Welfare in order to assist in resolution of the custody issue, and further ordered that both parties be examined by a psychiatrist.

7. Both of these prior actions were dismissed. The case at bar arises out of a third action for divorce which was commenced in November 1967.

■ Generalized criteria for resolution of custody issues in Alaska have been delineated both by judicial precedent and by legislative enactment. It is well established that on appeal our task is to ascertain whether or not the trial court misapplied the broad discretion vested in it in regard to determination of custody questions, and whether the court's findings in respect to custodial issues are clearly erroneous.[8] In Rhodes v. Rhodes,[9] we said:

> In determining the custody of children the trial court should be guided by the rule of quite general application that the welfare and best interests of the children should be given paramount consideration.

This criterion has been consistently adhered to in subsequent decisions.[10] In Harding v. Harding,[11] we qualified the tender years doctrine that the mother of a young child, if fit and proper, will generally be given preference in awards of custody with the requirement that it be applied only when other considerations were evenly balanced and was further subject to the court's discretionary power to safeguard the best interests of the children.[12]

Somewhat similar legislative criteria have been enacted. AS 09.55.205 of the Alaska Code of Civil Procedure provides in part that in awarding custody, the court is to be guided by the following considerations:

> (1) by what appears to be for the best interests of the child and if the child is of a sufficient age and intelligence to form a preference, the court may consider that preference in determining the question;
>
> (2) as between parents adversely claiming the custody neither parent is entitled to it as of right.[13]

Application of these criteria to the extremely perplexing problem of custody involves many uncertainties. Mechanistic application of these general custody rules is undesirable in any attempted solution of so crucial a question as what will promote the best interests, welfare and happiness of minor children. We recognize that articulation of the bases of custody decisions presents a formidable task for the trial court; that in many cases there is no satisfactory answer, given the parents' inability to live together as husband and wife; that great weight must be accorded to the trial judge's experience and to his evaluation of demeanor testimony; and that limitations

8. Bass v. Bass, 437 P.2d 324, 325 (Alaska 1968); Ransier v. Ransier, 414 P.2d 956, 957 (Alaska 1966); Rhodes v. Rhodes, 370 P.2d 902, 903 (Alaska 1962).

9. 370 P.2d 902, 903 (Alaska 1962) (footnote omitted).

10. In Ransier v. Ransier, 414 P.2d 956, 957 (Alaska 1966), the record disclosed unfaithfulness on the wife's part, as well as her abandonment of the children. In that case we concluded that the paramount factor to be given weight in the determination of the custody issue was the welfare and best interests of the children.

11. 377 P.2d 378, 379–380 (Alaska 1962).

12. Followed in Glasgow v. Glasgow, 426 P.2d 617 (Alaska 1967).

13. AS 09.55.205 (SLA 1968, ch. 160 § 1) became effective on July 23, 1968. In the case at bar, the trial took place in mid-June of 1968, partial findings and a partial decree were entered on December 6, 1968, and final findings of fact and conclusions of law and decree were entered on March 3, 1969.

The House Judiciary Committee's Report on Committee's Substitute for House Bill No. 247, which was eventually enacted into law as SLA 1968, ch. 160, reads in part as follows:

> The basic change in existing law made by this bill is the removal of the concept of 'fault' (for a divorce) from consideration in the award of child custody. 'Fault' for the divorce is not necessarily relevant to the question of which parent could best take care of the child. * * * 1967 Alaska House Journal 529–30.

Prior to its repeal by SLA 1968, ch. 160 § 2, AS 09.55.210(1) empowered the court to provide

> for the care and custody of the minor children of the marriage as it considers just and proper, having due regard to the age and sex of the children, and, unless otherwise manifestly improper, giving the preference to the *party not in fault*. (emphasis added)

of the courts' and litigants' resources and time often impede the creation of a satisfactory record.

Concerning the rationale for the trial court's award of custody in the case at bar, the court's formal findings of fact disclose the following:

> Both parties are adequate persons to have care and control of the minor children, however, because of the young age of the three children, the [appellee] is best fit to have legal custody of the minor children.

This formal finding is consistent with the trial judge's more comprehensive oral decision in which he stated, in part, that the "best interests" of the children were his only concern. After concluding that the psychiatric report was not too helpful, and that the Department of Health and Welfare's report was "not the best," the trial court further observed in his oral opinion that appellant was "more stable" than appellee. The court's reluctance to award the children to appellant apparently stemmed from the fact that appellant had not remarried, had at the time no place to keep the children, and would have had to hire a babysitter to take care of the children.[14] In regard to the appellee, the trial judge concluded that she had a "great many faults," had engaged in "horrendous conduct," was "unfaithful," and had left the children in Okinawa, yet was the mother of the children, properly cared for their physical needs, taught them what she could and did provide a home for them.

On this record we believe that the trial judge abused his discretion in awarding custody of the minor children to appellee. It appears that the basis for resolution of the custody issue was the tender years' doctrine to the exclusion of any other pertinent legal criteria or relevant factual considerations. Seemingly ignored in the decisional process was the paramount criterion of the welfare and best interests of the children which should be determinative.[5]

Study of the record shows appellee to be unstable and an irresponsible parent. The trial judge found that she had abandoned her children in Okinawa, possessed a great many faults, and had engaged in a course of "horrendous" conduct. Against these negative factors, it appears that appellant would have been awarded custody of the children but for the facts that he had not remarried by the time the final hearing was held, and that he would have had to employ babysitters if he had obtained custody. These reasons are unpersuasive in light of the welfare and best interests of the children, and the picture of the respective character and fitness of the parties that emerges from the factual record.

We therefore conclude that the trial court's findings concerning appellee's fitness to have the care and custody of the parties' minor children was clearly erroneous, and that it was an abuse of discretion to award custody to appellee. The case is reversed with directions to enter an amended decree awarding custody of the minor children to appellant with reasonable rights of visitation to appellee.[16]

NESBETT, C. J., not participating.

---

14. In this regard, the trial judge said: "If he were married to a fine girl and had a fine home, I might at this moment look very differently about this whole thing. I probably would, considering he's the most stable of the two."

15. Rhodes v. Rhodes, 370 P.2d 902, 903 (Alaska 1962) ; Harding v. Harding, 377 P.2d 378, 379–380 (Alaska 1962) ; AS 09.55.205(1) and (2).

16. We note that in contested custody cases the trial court, in its discretion, is empowered to appoint guardians ad litem to represent the interests of minor children. This discretion should be exercised advisedly, although in appropriate circumstances appointment of counsel will provide additional protection for the minor children. Civil Rule 14(b) ; *compare* Children's Rule 11(a).