Sybil Hast Kooper, J.
The Family Court is now vested with original jurisdiction to determine custody of children (Family Ct. Act, § 651, as amd. by L. 1972, eh. 535). This is such an action between the mother and father of three infant children, who are each suing for custody.
Although in theory, a father has an equal right with the mother to the custody of his children, in well over 90% of the cases adjudicated, the mother is awarded custody. (Drinan, The Right of Children in Modem American Family Law.)
Yet, sound application of the “best interests of the child” criterion requires that the court not place a greater burden on the father in proving suitability for custody than on the mother.
Application of a presumption favoring the mother violates the law of New York ,State. Both section 240 of the Domestic Relations Law, dealing with custody of children in matrimonial actions, and section 70 of the Domestic Relations Law, dealing with habeas corpus for a child detained 'by a parent, provide in relevant part: “In all cases there shall be no prima facie right to ,the custody of the child in either parent, but the court shall determine solely what is for the best interest of the child, and what will best promote its welfare and happiness ”.
The Appellate Division (Matter of “ FF ” v. “ FF ”, 37 AD 2d 893) held that this language means exactly what it says:1 ‘ The thrust of petitioner’s [the mother’s] argument is that the * * * record is devoid of those overriding considerations which would warrant the denial of the general principle of the propriety of committing children of tender years to their mother [citations omitted].' In several instances in the brief submitted to this court, petitioner reiterates the failure of ,the Family Court to make ,a finding of “ neglect ” on petitioner’s part in a context which suggests that the absence of such a specific finding necessitates an award of custody to the children’s mother. However, the rules applicable in cases of this type are clear and well established; there is no prima facie right to custody in either parent and the ultimate and controlling consideration is the welfare of the children (Matter of Wout v. Wout, 32 A D 2d 709 ; Domestic Relations Law, § 70; Lockwood v. Jagiello, 24 A D 2d 544).” (See, also, Matter of Cornell v. Hartley, 54 Misc 2d 732.)
Until recently, however, there has been a pattern of at least cursory invocation by the courts in New York and elsewhere, of the presumption that children of tender years, all other things being equal, should be given into the custody of their *180 mother. In fact, this approach to deciding custody cases, since the Domestic Relations Law was amended to forbid such preference, constitutes judicial error — error, moreover, which does not promote the best interests of the children involved. As Foster and Freed, authors of the comprehensive treatise Law and the Family, New York (vol. 2, § 29:6 [1967]) stated:
“ The statutory mandate in practice is ignored and instead of equality as between the parents the mother’s claim to the child is paramount. In reality, instead of 1 best interests of the child ’ serving as the test, the ‘ unfitness ’ rule which was designed to serve in custody contests between parents and non-parents is being applied ’ ’.
The “ tender years presumption ” is actually a blanket judicial finding of fact, a statement by a court that, until proven otherwise by the weight of1 substantial evidence, mothers are always better suited to care for young children than fathers. This flies in the face of the legislative finding of fact underlying the explicit command of sections 240 and 70 of the Domestic Relations Law, that the best interests of the child are served by by the court’s approaching the facts of the particular case before it without sex preconceptions of any kind.
However, the trend in legislation, legal commentary, and judicial decisions is away from the ‘ ‘ tender years presumption ’ ’.
Recent amendments of the Domestic Relations Law of several other States have codified as explicitly as New York the view that the child’s best interest requires that neither parent have preference. In Florida, for example, the relevant provision, effective July 1, 1971, states: “ The court shall award custody and visitation rights of minor children of the parties as a part of the proceeding for dissolution of marriage in accordance with the best interests of the child. Upon considering all relevant factors, the f ather of the child shall be given the same consideration as the mother in determining custody.” (Fla. Stat., § 61.13, subd. [2].)
Wisconsin’s law, also revised in 1971, provides in relevant part: “In determining the parent with whom a child shall remain, the court shall consider all facts in the best interest of the child and shall not prefer one parent over the other solely on the basis of the sex of the parent.” (Wis. Stat., § 247.24, subd. [3].)
The Colorado Revised Statutes (§ 46-1-5, subd. [7]) provides: “No party shall be presumed to be able to serve the best interests of the child better than any other party because of sex.” (L. 1967, p. 921, § 1.)
*181 Legal scholars advocate this evenhanded approach with near virtual unanimity. (See, e.g., Podell, Peck and First, Custody to Which Parent? 56 Marquette Univ. L. Rev., Fall 1972; Foster and Freed, Child Custody, 39 N. Y. U. L. Rev. 422 [1964]; Polow, Child Custody — The Law and Changing Social Attitudes; ABA Family Law Newsletter, November 1972.) Evidence that the courts are taking long strides toward abandoning the ‘ ‘ tender years presumption ” in favor of an unbiased consideration of the best interests of the children solely on the basis of the individual characteristics and relationships of the parents and children involved is found in the large number of recent custody eases in which the parents were treated equally and the father prevailed. (See the 48 cases collected in n. 23, p. 56, Podell, Peek and First, supra.)
Apart from the question of legality, the ‘ ‘ tender years presumption ” should be discarded because it is based on outdated social stereotypes rather than on rational and up-to-date consideration of the welfare of the children involved.
The simple fact of being a mother does not, by itself, indicate a capacity or willingness to render a quality of care different from that which the father can provide. The traditional and romantic view, at least since the turn of the century, has been that nothing can be an adequate substitute for mother love.
“ For a boy of such tender years nothing can be an adequate substitute for mother love — for that constant ministration required during the period of nurture that only a mother can give because * * * in her alone is service expressed in terms of love. She alone has the patience and sympathy required to mold and soothe the infant mind in its adjustment to its environment. The difference between fatherhood and motherhood in this respect is fundamental and the law should recognize it unless offset by undesirable traits in the mother.” (Jenkins v. Jenkins, 173 Wisc. 592, 595.)
Later decisions have recognized that this view is inconsistent with informed application of the “ best interests of the child ” doctrine and out of touch with contemporary thought about child development and male and female stereotypes.
In Garrett v. Garrett (464 S. W. 2d 740, 742-743 [Mo. App., 1971]), the court stated: “ The rule giving the mother preferential right to custody, is considerably softened by the realization that ‘ all things never are exactly equal ’ * * * and is predicated upon the acts of motherhood — not the fact of motherhood. * * * Likewise, the rule will yield if the welfare of the children demands it, because this is not a presumption of law but *182 a simple fact of life gleaned from human experience * * * and the courts are not timid in entrusting children into their father’s care and custody if their best interests will be served thereby.” (Citations omitted and emphasis added.)
Eminent psychologists and anthropologists, including Margaret Mead, have also acknowledged and asserted that both female and male parents are equally able to provide care and perform child-rearing functions.
“At present, the specific biological situation of the continuing relationship of the child to its biological mother and its need for care by human beings are being hopelessly confused in the * * * insistence that child and biological mother, or mother surrogate, must never be separated, that all separation even for a few days is inevitably damaging, and that if long enough it does irreversible' damage. This, is a new and subtle form of antifeminism in which men — under the guise of exalting the importance of maternity — are tying women more tightly to their children than has been thought necessary since the invention of bottle feeding and baby carriages.” (Margaret Mead, Some Theoretical Considerations of the Problem of Mother-Child Separation, 24 Amer. J. of Orthopsychiatry 471, 477 [1954].)
Studies of maternal deprivation have shown that the essential experience for the child is that of mothering — the warmth, consistency and continuity of the relationship, rather than the sex of the individual who is performing the mothering function. (See, e.g., R. A. Spitz and Katherine Wolf, “ Anaclitic Depression ”, Psychoanalytic Study of the Child, 1946, pp. 313-342; Leon J. Yarrow, Maternal Deprivation: Toward an Empirical and Conceptual Reevaluation, 58 Psychological Bull., 1961.)
Finally, application of the 1 ‘ tender years presumption ’ ’ would deprive respondent of Ms right to equal protection of the law under the Fourteenth Amendment to the United States Constitution.
Although courts have properly held that the primary consideration in awarding custody of cMldren is the welfare of the cMld, it is indisputable that each parent’s interests, their relationships with, rearing and custody -of their children are of substantial importance. (Prince v. Massachusetts, 321 U. S. 158,166; Pierce v. Society of Sisters, 268 U. S. 510, 535; Meyer v. Nebraska, 262 U. S. 390, 399.) Recent decisions of the Supreme Court of the United States make clear that differential treatment on the basis of sex of the kind created by the “ tender years presumption ” is “ suspect ” and therefore sub *183 ject to the strictest judicial scrutiny. In Frontiero v. Richardson (411 U. S. 677, 686) the court made explicit the incurable flaw in rules of law which accord, different treatment to men and women on the basis of rigid and outdated sexual stereotypes : “ Since sex, like race and national origin, is an immutable characteristic determined solely by the accident of birth, the imposition of special disabilities upon the members of a particular sex because of their sex would seem to violate 1 the basic concept of our system that legal ¡burdens should bear some relationship to individual responsibility’ [citation omitted]. And what differentiates sex from such nonsuspect statutes as intelligence or physical disability, and aligns it with the recognized suspect criteria, is that the sex characteristic frequently bears no relation to ability to perform or to contribute to society.”
The message of Frontiero is clear: persons similarly situated, whether male or female, must be accorded evenhanded treatment by the law. Legislative classifications may legitimately take account of need or ability; they may not be premised on unalterable sex characteristics that bear no necessary relationship to the individual’s need, ability or life situation. (See, also, Reed v. Reed, 404 U. S. 71; Stanley v. Illinois, 405 U. S. 645.) (Unwed father may not be deprived of custody without a hearing of the same quality and application of same standards as accorded all other parents.)
Classifications subject to “ strict scrutiny” under the Fourteenth Amendment pass constitutional muster only if a “ compelling state interest ’ ’ requires their existence. (See Frontiero v. Richardson, 411 U. S. 677; McLaughlin v. Florida, 379 U. S. 184; Loving v. Virginia, 388 U. S. 1.) The “best interests ” of the child might well qualify as such a compelling State interest if, in fact, it were served by the “ tender years presumption ”. But since, as has been shown, the presumption does not in fact serve the child’s interests, it does not constitute a compelling State interest justifying the different treatment of parents on the basis of sex. Thus the “ tender years presumption ” in addition to its other faults, works an unconstitutional discrimination against the respondent.
In this connection, even before Frontiero, the Federal District Court for the Southern District of New York indicated that governmental authorities could not, without violating the Fourteenth Amendment, make employee leaves for the purpose of caring for newborn infants available to mothers unless they also make them available to fathers. (Danielson v. Board of *184 Higher Educ. of City of N. Y., 358 F. Supp. 22.) Ruling on a motion to dismiss, the court held that the Board of Higher Education of the City of New York’s policy of granting such leaves only to mothers but not to fathers presented a colorable constitutional claim. The case was not pushed to a final decision because the board changed its policies to make such leave available for men.
Arbitrary assumptions about which spouse is better suited to care for young children are no more permissible in the case at bar than they are in the child care leave situation just described.
This court, in arriving at its decision, has applied one criterion only — the best interests of the children.
Having listened to all the testimony, having read all the medical reports and records, and having observed the demeanor and responses of the parties on the witness stand, this court concludes that it is in the best interests of the children for them to be in their father’s custody.