Rudy JOHNSON, Appellant,

v.

Linda JOHNSON, Appellee.

Linda JOHNSON, Cross-Appellant,

v.

Rudy JOHNSON, Cross-Appellee.

Nos. 2709, 2724.

Supreme Court of Alaska.

May 20, 1977.

---

1. In support of the text we cited *Burrell v. Burrell*, 537 P.2d 1, 4 (Alaska 1975).

R. Collin Middleton, Anchorage, for appellant, cross-appellee.

Edward G. King, Ziegler, Ziegler & Cloudy, Ketchikan, for appellee, cross-appellant.

## OPINION

Before BOOCHEVER, C. J. and RABINOWITZ, CONNOR, ERWIN and BURKE, JJ.

BURKE, Justice.

In this case, appellant Rudy Johnson challenges the superior court's reliance on the tender years presumption in awarding custody of his young children to their mother, Linda Johnson.

Rudy and Linda Johnson were married in 1966. Their daughter, April, was born in 1968 and their son, Darrin, in 1970. Several years after their marriage, Rudy and Linda became involved with the Jehovah's Witnesses, and both were baptized into the congregation. However, in 1974, Rudy Johnson became disenchanted with the religion and was excommunicated or "disfellowshipped" from the congregation for willfully smoking cigarettes. Although Rudy attempted to persuade Linda to abandon the religious principles which he had rejected, Linda remained with the church, and a

severe strain was placed upon the marriage. Rudy filed for divorce on April 8, 1975, and the children were temporarily placed in his custody, pending trial.

Judge Carlson presided over the five day trial in this divorce action, the only issue at trial being the custody of the two Johnson children. At the time of trial April was seven and Darrin five. The heart of Rudy Johnson's case was that if he were denied custody of the children, he would have virtually no input into their lives because of his disfellowshipped status. Testimony was adduced at trial that since a disfellowshipped member of the Jehovah's Witnesses is believed to be under, or in danger of coming under, satanic control, members of the congregation will not associate with him.

Rudy Johnson also introduced evidence that his children's development would be better served by an award of their custody to him. Dr. LaVere Edwin Clawson, a psychologist, and his wife Darleen Morel, a family counselor, concluded that the children should be awarded to their father since he appeared more willing to offer them "increased exposure to the usual experiences of children their age." Rudy testified to the same effect, stating that Linda had not taught the children such simple tasks as counting money, washing themselves, and helping to clean around the house. He also emphasized the fact that Linda would not allow the children to celebrate holidays, birthdays or allow them to join such organizations as the Brownies. She also does not believe in college for the children. In short, Rudy's case centered around the fact that Linda's plan to raise the children in strict accordance with the church's rules and decrees would not serve the children's best interest.

Aside from rebutting Rudy's testimony and that of Dr. Clawson and Ms. Morel, Linda's evidence focused on Rudy's instabil-

ity, as evidenced by threats of suicide and an unsuccessful suicide attempt, and his capacity for violence when frustrated. Linda offered proof that Rudy was unreasonable about Linda's visitation during the period in which he had temporary custody and introduced into evidence the deposition of Marilyn Kerr, a court-appointed social worker, who recommended that Linda have custody of April and Darrin.

The trial court, in extensive findings of fact, concluded that both parents were fit to have custody of the children and based its award of physical custody of the children to Linda on the tender years presumption. After citing AS 09.55.205 [1] for the proposition that his award of custody should be guided by the best interests of the children, the trial judge stated:

The statute has been interpreted in several cases and the following principles have emerged:

. . . . .

2. a mother of young children will generally be given preference for custody if the other factors are evenly balanced. *Harding v. Harding*, 477 [377] P.2d 378 (Alaska 1962); *Sheridan v. Sheridan*, 466 P.2d 821, 824 (Alaska 1970)

The trial court further reasoned:

The reasons for my conclusion that the best interests of the children are served by awarding their primary physical custody to Mrs. Johnson are the ages of April and Darrin and the fact that until their interim custody was awarded to Mr. Johnson in April, 1975, Mrs. Johnson had attended to nearly all of the physical needs of the children.

Judge Carlson awarded legal custody of the children to both parents so that Rudy could consent to medical care for them.

Appellant Rudy Johnson appeals the trial court's decision on two grounds. First, he

---

1. AS 09.55.205 provides in part:
 [I]n awarding custody the court is to be guided by the following considerations:
 (1) by what appears to be for the best interests of the child and if the child is of a sufficient age and intelligence to form a preference,

the court may consider that preference in determining the question;
 (2) as between parents adversely claiming the custody neither parent is entitled to it as of right.

contends that the trial court erred in applying the tender years presumption to the facts since that presumption is inconsistent with the statute's requirement that the best interests of the child be considered. He also argues that the tender years doctrine constitutes a denial of equal protection. Rudy's second argument is that the trial court abused its discretion in failing to award the children to him.

Appellee Linda Johnson cross appeals, contending that the trial court erred in failing to award her costs and attorney's fees.

■ Trial courts have wide discretion in determining custody issues, but that discretion is not unlimited. *Lacy v. Lacy*, 553 P.2d 928 (Alaska 1976). This court must determine on review "whether that discretion has been abused, perhaps by assigning too great a weight to some factors while ignoring others . . ." *Horton v. Horton*, 519 P.2d 1131, 1132 (Alaska 1974). Furthermore, if we find that the trial court has used an impermissible criterion in its determination, we will remand the case for a decision in which proper factors are considered. *Carle v. Carle*, 503 P.2d 1050, 1055 (Alaska 1972). In the instant case, we must determine whether the trial court assigned too great a weight to the age of the Johnson children and whether the tender years doctrine is now an impermissible criterion for the trial courts in Alaska to use.

Appellant challenges the trial court's reliance on the doctrine of tender years on two grounds. He first argues that the doctrine is no longer the law in Alaska and is inconsistent with AS 09.55.205, which provides that the courts should consider the best interests of the child in determining custody matters. The trial court viewed the tender years doctrine as a judicial interpretation of AS 09.55.205. However, *Sheridan v. Sheridan*, 466 P.2d 821 (Alaska 1970), and other cases decided since the enactment of AS 09.55.205 in 1968 reflect a growing trend away from use of the tender years

doctrine or any other mechanical formula in determining custody issues.[2]

In *Sheridan*, we noted our disapproval of the "mechanistic application" of custody rules and reversed the trial court's award of the children to their mother on the ground that:

> It appears that the basis for resolution of the custody issue was the tender years' doctrine to the exclusion of any other legal criteria or relevant factual considerations. Seemingly ignored in the decisional process was the paramount criterion of the welfare and best interests of the children which should be determinative. (footnote omitted) 466 P.2d at 825.

Clearly we did not, in *Sheridan*, equate the tender years doctrine with the best interests of the child as the trial court appeared to do. In *King v. King*, 477 P.2d 356 (Alaska 1970), we were again adamant in our rejection of mechanically applied formulas such as the tender years doctrine.

> [T]here has been a steady course of legal development whereby the best interests of the child are to be the paramount consideration in custody cases, to the exclusion of other criteria such as the doctrine that children of tender years will generally be awarded to the mother when other factors are fairly evenly balanced. 477 P.2d at 357.

■ Although the age of the children in a custody dispute is one factor which may be considered by the trial court in its determination of the best interests of the child, it is only one factor, to be weighed with many others. In *Turner v. Pannick*, 540 P.2d 1051 (Alaska 1975), we suggested factors which a trial court might wish to consider in its deliberations.

> [U]nder the 'best interests' test, the court is free to consider a number of factors including the moral fitness of the two parties; the home environment offered by the parties; the emotional ties to the parties by the child; the emotional ties to

---

**2.** *See* Gruenberg and Mackey, *A New Direction for Child Custody in Alaska*, 6 U.C.L.A.–Alaska L.Rev. 34, 43 (1976).

the child by the parties; the age, sex or health of the child; the desirability of continuing an existing child-third party relationship; and the preference of the child. 540 P.2d at 1054.

Certainly the trial court's use of the tender years presumption is inconsistent with the delicate weighing and balancing process suggested in *Pannick* as a method of determining the child's best interests.

Courts in other jurisdictions have also held the tender years doctrine to be inconsistent with a "best interests" statute. In *State ex rel. Watts v. Watts*, 77 Misc.2d 178, 350 N.Y.S.2d 285 (1973), the court reversed a custody decision which was based on the tender years presumption. New York's domestic relations statute is similar to Alaska's in that it affords no prima facie right to custody to either party, the controlling consideration being the best interest of the child. The *Watts* court reasoned that the statute was designed to eliminate such sex-based presumptions in favor of the best interests of the child.

> The 'tender years presumption' is actually a blanket judicial finding of fact, a statement by a court that, until proven otherwise by the weight of substantial evidence, mothers are always better suited to care for young children than fathers. This flies in the face of the legislative finding of fact underlying the specific command of [the statute], that the best interests of the child are served by the court's approaching the facts of the particular case before it without sex preconceptions of any kind. 350 N.Y.S.2d at 287–88.

The *Watts* court also concluded that the tender years doctrine should be discarded since it is based on "outdated social stereotypes."

> Studies of maternal deprivation have shown that the essential experience for the child is that of mothering—the warmth, consistency and continuity of the relationship rather than the sex of the individual who is performing the mothering function. (citations omitted) 350 N.Y.S.2d at 290.

The appellee concedes that the mothering function can be provided by a male parent as well as a female parent but argues that the tender years presumption is based on the greater probability that a mother will better supply mothering. She further argues that the tender years presumption is not irrebuttable, "since it would not be burdensome for the father to present evidence that he, not the mother, had performed all the acts for the infant which we summarize as mothering." This argument in favor of the presumption is not persuasive in light of the legislative intent that the trial court decide custody matters by weighing the unique facts in each case in order to determine the best interests of the child. As the court in *In Re Marriage of Bowen*, 219 N.W.2d 683 (Iowa 1974), remarked in abandoning the tender years doctrine:

> The real issue is not the sex of the parent but which parent will do better in raising the children. Resolution of that issue depends upon what the evidence actually reveals in each case, not upon what someone predicts it will show in many cases.

> \*　　\*　　\*　　\*　　\*　　\*

> We do not think either parent should have a greater burden than the other in attempting to obtain custody in a dissolution proceeding. It is neither necessary or useful to infer in advance that the best interests of young children will be better served if their custody is awarded to their mothers instead of their fathers. 219 N.W.2d at 688.

We conclude that the doctrine of tender years is not an appropriate criterion for determination of the best interests of the child under AS 09.55.205. Due to our disposition of this issue, we need not reach appellant's contention that use of the tender years doctrine violated his right to equal protection of the laws.

 Appellant next argues that in light of all the evidence presented at trial, the trial court abused its discretion in not awarding the children to him. Appellant cites three main areas in support of this contention. First, he argues that he will be

allowed little, if any, access to his children by virtue of his disfellowshipped status. Second, he argues that Linda will restrict his children's educational and cultural environment. He states that he plans to send the children to college, while Linda does not. Third, he cites the psychologists' reports in support of the contention that he will provide the expansive atmosphere necessary for the children's emotional development, while Linda would restrict them in their development. All of these factors center around Linda's plans to raise the children as Jehovah's Witnesses, and this court cannot deem the trial court's decision to award the children to Linda an abuse of discretion simply because of these plans. In *Carle v. Carle*, 503 P.2d 1050, 1055 (Alaska 1972), we found that the trial court erred in deciding the issue of custody on the premise that the child's best interest would be served by assimilation into the dominant culture and stated:

> It is not the function of our courts to homogenize Alaskan society. Recently, we had occasion to observe that 'The United States of America, and Alaska in particular, reflect a pluralistic society, grounded upon such basic values as the preservation of maximum individual choice, protection of minority sentiments, and appreciation for divergent lifestyles.' citing *Breese v. Smith*, 501 P.2d 159, 169 (Alaska 1972).

Certainly, we cannot use Linda's continued membership in the Jehovah's Witnesses as a basis for directing the trial court to award the children to Rudy. To do so would be violative of her right to freedom of religion under the First Amendment to the United States Constitution and of the principles articulated by this court in *Carle*. Furthermore, liberal and specific visitation rights with the children, such as those directed by the trial court,[3] would give Rudy the access which he desires.

In her cross appeal, Linda Johnson argues that the trial court abused its discretion in failing to award her costs and attorney's fees. Although she concedes that it is within the court's discretion to deny fees in divorce actions, she argues that the trial court in this case denied fees automatically and without considering the proper factors.

■ The award of attorney's fees in divorce cases is regulated by statute. AS 09.55.200(a)(1) provides:

> (a) During the pendency of the action, the court may provide by order
>
> > (1) that one spouse pay an amount of money as may be necessary to enable the other spouse to prosecute or defend the actions; . . .

In *Burrell v. Burrell*, 537 P.2d 1 (Alaska 1975), we held that "whether or not to make any award pursuant to AS 09.55.-200(a)(1) . . . is committed to the sound discretion of the trial court." We also noted in *Burrell* that the "prevailing party" rule, used for determination of awards of attorney's fees under Rule 82, Alaska Rules of Civil Procedure, is not applicable to awards of fees in divorce actions. Instead, "the parties' relative economic situations and earning powers are relevant factors to be weighed in determining whether to order payment pursuant to AS 09.55.-200(a)(1)." 537 P.2d at 7.

When the question of costs and fees first came up during final arguments regarding the specific matters of the court's order, Rudy Johnson's attorney argued on economic grounds against an award of fees to Linda. He asked the court to consider:

> The problem of the economic position of the individuals and here we're talking about two bankrupt people. The fact that Mr. Johnson as well has pretty substantial attorney fees as well as other costs which he's incurred in attempting to work out his problem . . . . .

The court responded at that time that it intended to deny costs "because that's been my policy in cases of this nature. . . ." Later, during a hearing on costs, Judge

---

**3.** Under Judge Carlson's order, Rudy could have the children on alternate weekends, for ten days during Christmas, and for two months each summer. Additional visitation was encouraged by the court.

Carlson seemed to explain what he meant by "cases of this nature."

[I] decided that both parties should bear their own costs and attorney's fees. I've done this in other divorce cases where each party has expended approximately an equal amount of effort, and the property was divided equally between the parties. I expect that in a case of this nature, neither party really prevails because as in this case, neither party got exactly what he wanted.

He also mentioned that "each party has expended approximately equal amounts."

■ The fact that neither party prevailed is of no relevance to the trial court's determination. However, the other factors which the trial court found to be dispositive were: (1) that an equal amount of fees had been expended by the parties; (2) that an equal amount of time and effort had been expended; and (3) that the property had been divided equally. At least the division of property and possibly the expenditure of fees have bearing on the relative economic standing of the parties. Furthermore, these are reasonable factors for the trial court to consider and do not constitute an automatic and unreasoning denial of fees as Linda Johnson contends. Finally, in *Burrell*, we found the relative economic standing of the parties to be only a relevant consideration to the decision to award fees; we did not hold it to be the only permissible consideration. Thus, the trial court did not abuse its discretion in denying Linda Johnson's request for costs and fees.

In view of the fact that the trial court based its award of physical custody of the children to Linda on the tender years presumption, it is necessary to remand the case to the trial court for further consideration of the custody issue in accordance with the criteria set forth in this opinion.

Affirmed in part; reversed in part and remanded for proceedings consistent with this opinion.