*Notice: This opinion is subject to correction before publication in the PACIFIC REPORTER. Readers are requested to bring errors to the attention of the Clerk of the Appellate Courts, 303 K Street, Anchorage, Alaska 99501, phone (907) 264-0608, fax (907) 264-0878, email corrections@appellate.courts.state.ak.us.*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| KEVIN CO, | ) | |
| | ) | Supreme Court No. S-14248 |
| Appellant, | ) | |
| | ) | Superior Court No. 3HO-09-00265 CI |
| v. | ) | |
| | ) | O P I N I O N |
| KELLY MATSON, | ) | |
| | ) | No. 6846 – November 29, 2013 |
| Appellee. | ) | |
| | ) | |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Homer, Charles T. Huguelet, Judge, and Peter G. Ashman, Judge pro tem.

Appearances: Rhonda F. Butterfield, Anchorage, for Appellant. Michelle S. Nesbett, Nesbett & Nesbett, Anchorage, for Appellee.

Before: Fabe, Chief Justice, Winfree, Stowers, Maassen, and Bolger, Justices.

FABE, Chief Justice.

## I.    INTRODUCTION

In a divorce proceeding between Kevin Co and Kelly Matson, the superior court awarded Matson sole legal custody and primary physical custody of the couple's two minor children. Co challenges the legal and physical custody awards as well as the visitation schedule. Because we conclude that the superior court engaged in a

comprehensive review of the statutory best-interests factors, made clear and thoughtful findings of fact, and did not abuse its discretion, we affirm the superior court's custody decision in all respects.

## II.    FACTS AND PROCEEDINGS

Kevin Co and Kelly Matson live in Homer and have two children, Spencer and Marina. Spencer is seven years old; Marina is five. Co and Matson were married in 2007 and separated in 2009. In September 2009 Co filed for divorce.

In a motion for interim custody, Co sought joint legal and physical custody of both children. Matson opposed the motion and sought primary physical custody of the children.

In a hearing before Superior Court Judge Charles T. Huguelet, the parties agreed on an interim custody arrangement, under which they were to share joint legal custody of both children. Under the agreement, Matson was to assume primary physical custody of Marina, and Matson and Co were to share physical custody of Spencer. The custody arrangement called for a gradual increase in the time the children would spend with Co, eventually leading to an even division of custodial time between the parents. In addition to the parties' agreed upon custody arrangement, the superior court ordered both parents not to use marijuana while the children were in their custody.

A few months later, Matson filed an emergency motion to modify custody. In her supporting affidavit, Matson claimed that Spencer was becoming violent, that Co was becoming unpredictable and verbally abusive, and that their lawyers had to be called in to resolve an incident in which Marina was sick and the parents could not determine who should take her to the doctor. Matson concluded that cooperative co-parenting had become impossible. Judge Huguelet declined to modify the original interim custody arrangement but scheduled another hearing for the end of the month. At that second

hearing, Judge Huguelet again declined to alter the custody arrangement, but he did halt the gradual increase in Co's custody time with the children.

Pro tem Superior Court Judge Peter G. Ashman conducted the divorce trial. As of the date of trial, Co had custody of Spencer for three overnights each week and of Marina for one overnight each week. At trial, Matson sought sole legal and primary physical custody of the children. Co sought joint legal and physical custody of the children, with delayed implementation of the equal custody schedule for Marina.

In his written findings of fact and conclusions of law, Judge Ashman concluded that while both parents possessed "considerable talent and ability," the inability of the parents to communicate necessitated an award of sole legal custody to one parent. Both parents agreed at trial that communication and agreement on important issues, such as medical care, was not possible. In awarding sole legal custody to Matson, Judge Ashman concluded that Matson "demonstrated a more mature parenting approach" and would be "more likely to foster a strong relationship between the children and the other parent than Mr. Co would be able to do if the situation were reversed." Judge Ashman also found that Matson should be awarded primary physical custody due to "the young age of the children and the need for stability as they approach school age."

Judge Ashman specifically considered all of the statutory best-interests factors and found that a majority of the nine factors favored Matson. He found that the other factors favored neither Co nor Matson. Accordingly, Judge Ashman awarded Matson sole legal custody and primary physical custody of the children and Co visitation with both children on three weekends a month. Co was also to have visitation with Spencer on all Wednesday evenings and with Marina two Wednesday evenings a month. The order also provided vacation and summer visitation schedules. Co now appeals the superior court's custody determination.

## III.  STANDARD OF REVIEW

"We will not 'reverse a trial court's resolution of custody issues unless, after a review of the entire record,' we are 'convinced that the trial court abused its discretion or that its controlling factual findings are clearly erroneous.' "[1]  An abuse of discretion will be found if the trial court "considered improper factors, or improperly weighted certain factors in making its determination."[2]  Clear error will be found only when a review of the entire record leaves us with "a definite and firm conviction . . . that a mistake has been made."[3]  Particular deference is given to the "trial court's factual findings when they are based primarily on oral testimony, because the trial court, not this court, performs the function of judging the credibility of witnesses and weighing conflicting evidence."[4]

## IV.  DISCUSSION

In his appeal Co challenges the superior court's decisions on both legal and physical custody.  Physical and legal custody are two distinct concepts that must be analyzed separately.[5]  " 'Legal custody' refers to the responsibility for making 'major decisions affecting the child's welfare' and is a status that may be held by a parent who

---

[1]  *Michele M. v. Richard R.*, 177 P.3d 830, 834 (Alaska 2008) (citing *Valentino v. Cote*, 3 P.3d 337, 339 (Alaska 2000)).

[2]  *Millette v. Millette*, 177 P.3d 258, 261 (Alaska 2008) (quoting *Gratrix v. Gratrix*, 652 P.2d 76, 80 (Alaska 1982)).

[3]  *Ebertz v. Ebertz*, 113 P.3d 643, 646 (Alaska 2005) (alteration in the original) (quoting *Jenkins v. Handel*, 10 P.3d 586, 589 (Alaska 2000)).

[4]  *Id.* (citing *In re Adoption of A.F.M.*, 15 P.3d 258, 262 (Alaska 2001)).

[5]  *Collier v. Harris*, 261 P.3d 397, 403 (Alaska 2011).

does not have 'physical custody,' which refers to the responsibility for physical care and immediate supervision of the child."[6]

In a divorce proceeding both legal and physical custody are analyzed using the best-interests factors found in AS 25.24.150(c).[7] Those factors are:

(1)    the physical, emotional, mental, religious, and social needs of the child;

(2)    the capability and desire of each parent to meet these needs;

(3)    the child's preference if the child is of sufficient age and capacity to form a preference;

(4)    the love and affection existing between the child and each parent;

(5)    the length of time the child has lived in a stable, satisfactory environment and the desirability of maintaining continuity;

(6)    the willingness and ability of each parent to facilitate and encourage a close and continuing relationship between the other parent and the child, except that the court may not consider this willingness and ability if one parent shows that the other parent has sexually assaulted or engaged in domestic violence against the parent or a child, and that a continuing relationship with the other parent will endanger the health or safety of either the parent or the child;

---

[6]    *D.J. v. P.C.*, 36 P.3d 663, 670 n.26 (Alaska 2001) (citing *Bennett v. Bennett*, 6 P.3d 724, 726 (Alaska 2000)).

[7]    *See, e.g.*, *Hunter v. Conwell*, 219 P.3d 191, 196 (Alaska 2009) (considering the AS 25.24.150(c) best-interests factors in a request for modification of both legal and physical custody); *Ebertz*, 113 P.3d at 646, 647 (considering the AS 25.24.150(c) best-interests factors in an initial determination of both legal and physical custody).

(7) any evidence of domestic violence, child abuse, or child neglect in the proposed custodial household or a history of violence between the parents;

(8) evidence that substance abuse by either parent or other members of the household directly affects the emotional or physical well-being of the child;

(9) other factors that the court considers pertinent.

Co argues that the superior court erred in several respects. We address each of his arguments in turn.

## A. The Trial Court Did Not Err In Awarding Sole Legal Custody To Matson.

The preference of the legislature is for parents to share joint legal custody.[8] "[A] court may award joint legal custody if it is in the best interests of the child."[9] Joint legal custody, however, is "only appropriate when the parents can cooperate and communicate in the child's best interest."[10] Here the superior court found that Co and Matson were incapable of communicating or cooperating with regard to "the most basic kinds of issues involving the children's schedule, school or medical needs." Thus, the superior court concluded that an award of sole legal custody was necessary. Both Co and Matson concede that constructive communication was no longer possible at the time of trial.[11]

---

[8]     *Farrell v. Farrell*, 819 P.2d 896, 898 n.1 (Alaska 1991) (citing ch. 88, § 1(a), SLA 1982).

[9]     *Jaymot v. Skillings-Donat*, 216 P.3d 534, 540 (Alaska 2009) (citing AS 25.20.060(c)).

[10]     *Id.* (quoting *Farrell*, 819 P.2d at 899).

[11]     Co faults Matson for the breakdown in communication and suggests that Matson's communication style should have weighed against her in the legal custody

(continued...)

Co contends, however, that the court should have awarded sole legal custody to him instead of Matson in light of these communication difficulties. Co also claims that the superior court erred in its consideration of the statutory best-interests factors in awarding Matson sole legal custody.[12] Specifically, he challenges the superior court's findings regarding "the physical, emotional, mental, religious, and social needs of the child[ren],"[13] and the ability of the parents to foster a relationship between the children and the other parent.[14]

The first best-interests factor requires the trial court to examine "the physical, emotional, mental, religious, and social needs of the child."[15] The superior court found that Matson would best be able to meet the physical needs of the children because of her attentiveness to their health, despite some concern regarding her failure to have the children vaccinated. Co maintains that he should have been awarded sole legal custody of the children because he would use legal custody more wisely than Matson with regard to medical decision-making.

Co also contends that the superior court disregarded his testimony regarding medical decisions. At trial, Co testified that his first choice for medical care was for the children to be seen by a doctor at Homer Medical and that he believed that the children

---

[11](...continued)
determination. The trial court's award to Matson, however, is grounded in its determination that Matson is favored by the statutory best-interests factors. We conclude that the trial court did not abuse its discretion in this determination.

[12]    AS 25.24.150(c).

[13]    AS 25.24.150(c)(1).

[14]    AS 25.24.150(c)(6).

[15]    AS 25.24.150(c)(1).

should be vaccinated. Co challenged Matson's medical decisions, including her preference to refrain from vaccinating the children. Co also described Matson's attentiveness to the children's health as an "obsess[ion]," evidenced by her preparation of a food journal, her insistence that the children experienced allergies, and her requirement that the children adhere to strict diets, including a gluten-free diet for Spencer.

But Matson testified at trial that she would be "happy to immunize the kids," and she pointed out that Co had previously agreed that the children would not be vaccinated. She also noted that Co had agreed that the children should be seen by both licensed medical doctors and naturopaths. In Matson's view, Co was not as well informed about the children's medical needs and had failed to attend important medical appointments.

Judge Ashman considered Co's concerns. He acknowledged Matson's choice to pursue alternative medical care and expressed some reservation over her opposition to having the children vaccinated. But Judge Ashman ultimately found that Matson "demonstrates a higher degree of attention to the children's physical and medical needs than does [Co]." In light of the particular deference we give to a trial court's assessment of the parties' oral testimony at trial,[16] we cannot conclude that Judge Ashman clearly erred in this finding.

The sixth best-interests factor requires the trial court to consider "the willingness and ability of each parent to facilitate and encourage a close and continuing relationship between the other parent and the child[ren]."[17] Co questions the relevance of this factor to the determination of legal custody and contends that it was an abuse of

---

[16] *Ebertz v. Ebertz*, 113 P.3d 643, 646 (Alaska 2005).

[17] AS 25.24.150(c)(6).

discretion to find that it favored Matson. But as one of the best-interests factors enumerated in AS 25.24.150(c), its consideration by the superior court was relevant.[18]

We next turn to Co's contention that the superior court erred in awarding primary physical custody to Matson.[19]

**B.    The Superior Court Did Not Err By Awarding Primary Physical Custody To Matson.**

Co alleges many errors by the superior court with regard to the award of primary physical custody to Matson. Specifically he alleges that the superior court erred (1) in its consideration of the statutory best-interests factors, (2) by applying the "tender years doctrine," and (3) by failing to maintain the interim custody agreement.

**1.    The superior court did not err in its consideration of the statutory best-interests factors.**

The superior court made thoughtful, detailed findings with regard to the nine statutory best-interests factors, expressly discussing each factor. It found that five of the factors favored Matson, while the rest favored neither parent. Co challenges only the assessment of factors that the superior court found favored Matson.

---

[18]    *See supra* note 7.

[19]    Co suggests that the superior court conflated its analyses of legal and physical custody based upon the proximity of these topics in its written findings. While Co is correct that a superior court must consider physical and legal custody separately, *Collier v. Harris*, 261 P.3d 397, 403 (Alaska 2011), there is no evidence that Judge Ashman conflated his analyses of these types of custody. To the contrary, Judge Ashman's findings included separate reasoning for his decisions on legal and physical custody.

> **a.** **The superior court did not err in concluding that Matson was more likely to facilitate and encourage a close and continuing relationship between Co and the children.**

The sixth best-interests factor requires the trial court to consider "the willingness and ability of each parent to facilitate and encourage a close and continuing relationship between the other parent and the child[ren]."[20] The superior court acknowledged that "[t]his is a difficult factor to assess" but found that Matson "demonstrated the more thoughtful approach to this issue" and that this factor significantly favored Matson. Specifically, the superior court found that (1) Matson referred appropriately to Co in the children's presence while Co was sarcastic when testifying about his relationship with Matson; (2) Matson was more interested in what happened to the children while they were in Co's care than he was when the children were with Matson; and (3) Co told Matson to "mind her own business" when Matson sought a piece of medical information about one of the children.

Co asserts that Judge Ashman erred in his consideration of this evidence. But we give "particular deference to the trial court's factual findings when they are based primarily on oral testimony, because the trial court, not this court, performs the function of judging the credibility of witnesses and weighing conflicting evidence."[21] Given that the superior court's finding was based upon Co's "responses to questions . . . [which] were sometimes sarcastic" and Co's demeanor on the stand, it would be inappropriate to substitute our judgment for that of the superior court.

Co's argument that the court ignored Matson's own inappropriate comments and behavior is not persuasive in light of this deferential standard. There is no showing that the superior court failed to consider Co's testimony or to give sufficient

---

[20]     AS 25.24.150(c)(6).

[21]     *Ebertz*, 113 P.3d at 646 (internal quotation marks and citations omitted).

weight to the evidence he presented. In fact, the trial court acknowledged Co's testimony by adding that it was "mindful that Mr. Co believes that Ms. Matson is overly inquisitive and perhaps even hyper-vigilant." There is no indication that the superior court erred in finding that this factor favored Matson.

Co also alleges that it was clearly erroneous for the superior court to find that Co "stated that [Matson] should have minded her own business" with regard to a piece of medical information. Both parties agree that the finding was derived from Co's testimony on re-cross examination. Co was being questioned about his communication over Marina's whereabouts at a book fair:

> Q: You mentioned the book fair time where Spencer came back with a book and you said [Matson] assumed that you had left Marina with somebody else?
>
> A: Well, that's what she testified.
>
> Q: Okay. Did you tell her?
>
> A: No.
>
> Q: So if you don't tell her, what other option does she have but to assume?
>
> A: She can keep her — she can mind her own business.

The questioning then changed focus to a medical incident involving Marina. Matson concedes that Co's comment that "she can mind her own business" was unrelated to any medical issue.

Although the superior court was incorrect in describing the context of Co's "mind her own business" comment as relating to a piece of medical information, this fact was used to support the finding that Matson was more willing to communicate about the children than Co. The thrust of the finding remains unaltered despite the superior court's contextual error. The superior court concluded that Matson was interested in the children's well-being when they were with Co and that Co withheld information from

her.  In order to reverse a custody determination, "the entire record [must] demonstrate[] that the controlling findings of fact are clearly erroneous."[22]  The superior court's mistake on this minor contextual point does not warrant reversal.

Finally, in his reply brief, Co argues for the first time that his sarcastic comments regarding Matson should not be considered because they were not made in the presence of the children.  This point does not alter the fact that the record supports the superior court's finding.  The superior court did not err in considering Co's attitude on the stand in assessing his ability to foster effective communication between Matson and the children.

> **b.**     **The superior court did not err in finding that Co's use of marijuana limits his emotional availability and could affect the children's schedules.**

The eighth best-interests factor focuses on the role of parental substance abuse and any "evidence that substance abuse by either parent or other members of the household directly affects the emotional or physical well-being of the child[ren]."[23]  Co argues that the superior court erred by finding that Co's regular use of marijuana weighed against awarding him custody of the children.

Co admits that he smoked marijuana recreationally up to three times a week during his marriage and currently smokes "once or twice a week."  Matson testified that Co's drug use was "wildly disruptive" to their home life because Co stayed up late and was unavailable to help with the children.  Matson also alleged in an affidavit supporting her motion for custody that Co almost set fire to the house after smoking marijuana when he left a pan on the stove.  The superior court found that Co's regular use of marijuana weighed against Co.  Co maintains that this finding was erroneous for several reasons.

---

[22]     *Melendrez v. Melendrez*, 143 P.3d 957, 959 (Alaska 2006).

[23]     AS 25.24.150(c)(8).

-12-                                                                  6846

First, Co argues that there is no evidence that he violated a 2010 court order forbidding him from smoking marijuana while the children are in his custody. But the superior court acknowledged that "Mr. Co continues to use marijuana but claims not to do so when the children are around." Thus, the superior court relied on the general presence and role of marijuana use in Co's life, rather than any allegation that Co was smoking in the presence of the children in violation of the court order.

Second, Co argues that there is no evidence that his marijuana use amounts to "substance abuse" that "directly affects the emotional or physical well-being of the child" as required by the eighth best-interests factor.[24] But the trial court is required to consider all relevant factors,[25] which may include whether the use of illicit substances generally affects the well-being of the children. And it was reasonable to conclude that Co's admitted marijuana use had an effect on the emotional well-being of the children in light of the evidence of how Co's marijuana use affected the children in the past. In combination with evidence that Co continues to use marijuana, the superior court concluded that it could not "control the effect that the presence of drugs in Mr. Co's life ultimately will have on the children." The superior court's finding that this factor favors Matson over Co was not clearly erroneous.[26]

---

[24]     AS 25.24.150(c)(8).

[25]     AS 25.24.150(c)(9).

[26]     Co also argues that the superior court's finding that "[r]egular use of drugs is a choice that limits a parent's emotional availability to a child" conflicts with its earlier statement that "[e]ach parent is equally capable of meeting the children's emotional and social needs." But these statements do not present an inherent conflict.

**c.** **The superior court did not err in finding that Matson's focus on the children's schedules weighed in favor of awarding her custody.**

Analyzing the ninth best-interests factor ("other factors that the court considers pertinent"[27]), the superior court concluded that Co seemed more focused on his own schedule, while Matson was more likely to arrange her schedule around the needs of the children. Co argues that this finding was clearly erroneous because the superior court gave undue weight to Matson's testimony while ignoring his own. But the trial court had evidence before it that Co was not focused on the children's schedules. The superior court heard evidence that Co did not enforce bedtimes or keep a consistent bedtime routine; that Co was late — and sometimes very late — in taking the children to school; and that Co often slept late and didn't take care of the children in the morning.

Co argues that the superior court placed undue weight on his request for a noon exchange of the children when it found that "Mr. Co demonstrated less concern about [arriving at school on time] and even in his custody proposal seeks a noontime exchange so that his morning with the children will be more 'relaxed.' " While admitting that he sought a noon exchange on Saturdays, Co argues that he never expressed a desire for a late exchange on school days. But when Co was asked about the 10:00 a.m. transition time on weekdays, he responded that the 10:00 a.m. time resulted in "a rush out the door" and that "it might be better in the future just to sort of do all the drop offs and pickups at noon." And the superior court concluded only that Co's request was indicative of a general reluctance to keep the children on a regular schedule.

Co also argues that the judge was "hyper-focused" on Co's admission that he often brought Spencer to preschool 10 to 15 minutes late and was sometimes an hour late. Co argues that this is unimportant because "this was pre-school, *not* school." But

_____

[27]     AS 25.24.150(c)(9).

Co's failure to bring the children to preschool on time was just one piece of evidence considered by the superior court in its decision. We cannot conclude that the superior court weighed this fact inappropriately or that it erred by considering this evidence in reaching its decision.

Finally, Co contends that Matson herself was habitually late to exchange the children. But the superior court has considerable discretion to weigh conflicting evidence.[28] The mere fact that the court credited Matson's testimony over Co's does not indicate a clear error.[29] There was ample evidence to support the finding that Co did not keep the children on a consistent, stable schedule, and the superior court did not err with respect to this factor.

## 2. The court did not apply the "tender years" doctrine.

The tender years doctrine is the presumption that "a mother of young children will generally be given preference for custody if the other factors are evenly balanced."[30] We have concluded that "the doctrine of tender years is not an appropriate criterion for determination of the best interests of the child" under Alaska law.[31]

Co argues that the superior court erroneously relied on the tender years doctrine to award primary physical custody to Matson. As evidence, Co cites the following passage from the superior court's decision:

> Given the young age of the children and the need for stability
> as they approach school age, the court finds that it is in the

---

[28]    *Ebertz v. Ebertz*, 113 P.3d 643, 647 (Alaska 2005).

[29]    *Id.*

[30]    *Johnson v. Johnson*, 564 P.2d 71, 73 (Alaska 1977).

[31]    *Id.* at 75. *See also* AS 25.20.060(b) (providing that "[n]either parent . . . is entitled to preference in the awarding of custody").

children's best interests that Ms. Matson also be awarded primary physical custody.

Co argues that the two reasons specified in this passage — the age of the children and the need for stability — "are clearly within the definition of the 'tender years' doctrine." But nothing in the superior court's observation suggests that it applied the tender years doctrine. The tender years doctrine refers to a "mechanistic application" of a custody rule "that children of tender years will generally be awarded to the mother when other factors are fairly evenly balanced."[32] In this case the factors were not evenly balanced.

Far from applying the mechanistic, bright-line approach of the tender years doctrine rejected in *Johnson*, the superior court expressly considered and balanced the statutory best-interests factors. And Co has presented no evidence to support any assertion that the superior court's order reflected gender bias. Indeed, the superior court found that Co was a capable parent possessing "considerable talent and ability." It is true that the superior court ultimately awarded primary physical custody to Matson, but "judicial bias should not be inferred merely from [an] adverse ruling[]."[33]

### 3. The superior court was under no obligation to maintain the interim custody agreement.

In January 2010 the parties agreed to an interim shared custody schedule in which Co's time with the children would gradually increase. Matson filed a motion to modify this agreement, and although the court allowed Co to retain joint physical custody, the original stair-step provision was eliminated until a further hearing could be held. Co argues that the superior court abused its discretion by reducing his time with the children in its final custody determination and abruptly changing the status quo.

---

[32] *Johnson*, 564 P.2d at 74 (citing *King v. King*, 477 P.2d 356, 357 (Alaska 1970)).

[33] *Tillmon v. Tillmon*, 189 P.3d 1022, 1027 n.13 (Alaska 2008).

Additionally, Co argues that in light of the interim agreement it was clearly erroneous to find that the children resided primarily with Matson prior to trial.

There is no clear support in our case law for a presumption favoring the maintenance of a pre-trial interim custody arrangement. Indeed, in discussing non-custodial visitation, we have suggested that pre-trial visitation arrangements are secondary to a consideration of the best interest of the child.[34] Here, the superior court complied with the statutory mandate to consider the best-interests factors. No separate consideration of the terms of the interim custody agreement was necessary.

Co also argues that the superior court erred in finding that the children resided primarily with Matson while the interim custody agreement was in place. The superior court, however, used this finding in assessing only the fifth best-interests factor,[35] which it determined favored neither parent. Thus, even if it was erroneous, this finding did not affect the ultimate outcome of the trial.

C.    **The Visitation Schedule Ordered By The Superior Court Was Reasonable And Was Not An Abuse Of Discretion.**

The superior court awarded Co physical custody of the children on most weekends and one day a week. Co argues that the superior court erred by granting him visitation with the children on Saturday nights, when he works as a DJ.

The superior court specifically found that Co had trouble with weekday schedules and getting the children to school on time. As discussed above, the finding with respect to Co's ability to observe the children's schedule was not clearly erroneous.

---

[34]    *See Morino v. Swayman*, 970 P.2d 426, 429 (Alaska 1999) (discussing the availability of an evidentiary hearing to modify visitation in light of de facto changes agreed to by the parents).

[35]    "[T]he length of time the child has lived in a stable, satisfactory environment and the desirability of maintaining continuity." AS 25.24.150(c)(5).

Thus, it was not an abuse of discretion to determine that weekend custody for Co was in the best interest of the children, despite Co's Saturday late-night work schedule.

Co also argues that his proffered literature about shared custody was ignored and that the superior court should have incorporated an automatic increase in custody time when the children reach kindergarten age, based upon the approval of such agreements by this court in the past. But a trial judge has substantial discretion in implementing a visitation schedule.[36] There is no indication that the superior court improperly weighed any evidence, and the detailed visitation schedule it crafted in response to specific evidence in the record about the children's schedules and routine was well within its broad discretion.

## V. CONCLUSION

The superior court's custody decision is AFFIRMED in all respects.

---

[36] *Millette v. Millette*, 177 P.3d 258, 261 (Alaska 2008).