**SARDO v. VILLAPIANO.**

No. 6512.

United States Court of Appeals for the District of Columbia.

Argued Oct. 8, 1935.

Decided Nov. 11, 1935.

Rehearing Denied Jan. 15, 1936.

VAN ORSDEL, Associate Justice, dissenting.

———◇———

Ringgold Hart, of Washington, D. C., for appellant.

Julian I. Richards, of Washington, D. C., for appellee.

Before MARTIN, Chief Justice, and ROBB, VAN ORSDEL, GRONER, and STEPHENS, Associate Justices.

MARTIN, Chief Justice.

This case was commenced in the lower court by a petition in habeas corpus filed by Helen Virginia Villapiano, the present appellee, to secure the custody of petitioner's minor child from appellant, who is its paternal grandfather.

The return of appellant to the writ of habeas corpus denied the right of the mother to the custody of the child upon the ground (1) that she had abandoned the child; (2) that the child had no love and affection for her; and (3) that she was not a fit and proper person to have the custody of the child.

After a full hearing of the testimony regarding the facts, the lower court found in favor of the petitioner and awarded the custody of the child to her. Whereupon, the present appeal was taken.

The record before us contains all the testimony taken at the trial, together with the court's findings of fact and conclusions of law in the case. It appears from the evidence that in the year 1925 the appellee was married to Albert J. Sardo, the son of the appellant; that one child was born to them, being the infant son involved in the present case, who is now about 9 years of age; that Sardo and his wife lived together in harmony until some time prior to November, 1932, at which time they ceased marital relations. In the year 1933, following the cessation of marital relations, the boy's mother, with the approval of her husband, went with the boy to Asbury Park to the home of Dr. Joseph G. Villapiano and his sister, who had long been friends of the Sardo family.

The separation of Sardo and his wife was caused, as stated by his wife, by the improper association of Sardo with other women, and by his cruelty toward her following such conduct. After the separation and while Mrs. Sardo was at the home of the Villapianos in Asbury Park, it was arranged between her husband and herself that she should obtain a Reno divorce. She obtained such a divorce upon the ground of "his cruel conduct toward her, consisting of her husband running with other women and beating her." According to her arrangements with her husband, the custody of the child was awarded to him.

It appears that after she had separated from her husband, being at a time when it was understood that a divorce would be secured by them, Mrs. Sardo, while living in

the home of Dr. Villapiano, committed adultery with him, and a child was begotten of this relationship. Immediately after the granting of the Reno divorce she was married to Dr. Villapiano and has since remained his wife. Five months after this marriage she was delivered of a child resulting from her relationship with Dr. Villapiano. This child is still living.

In February, 1934, the father of the boy died, and by force of these circumstances the boy came into the custody of his grandfather and has continued to live with him.

Almost immediately after the death of her former husband Mrs. Villapiano demanded the custody of her child from his grandfather. This was refused, whereupon the present proceedings in habeas corpus were begun by her.

Subsequent to the decree of the trial court the appellant was permitted to give a "supersedeas bond" and retain the custody of the child pending the present appeal. The child is therefore now in the custody of his grandfather awaiting the decision of this court.

Upon a careful consideration of the testimony in this case and of the facts and circumstances disclosed thereby, we are convinced that the trial court came to a correct conclusion upon the issue herein involved.

▆▆▆▆ It is axiomatic that the primary consideration in such a case is for the welfare of the child. Beall v. Bibb, 19 App.D.C. 311; Seeley v. Seeley, 30 App.D.C. 191, 12 Ann.Cas. 1058. It is established both by statute and common law that as between the grandfather and the mother the child should be intrusted to the mother, unless such a course is inconsistent with the child's welfare. Title 15, c. 3, § 31, D.C.Code 1929. Moreover, the custody of children is a question largely of judicial discretion, which will not be reviewed unless it has been manifestly abused. Seeley v. Seeley, supra.

In the present case there is no accusation made against the character or conduct of the boy's mother except the fact that after her estrangement from her husband and after it was understood between them that a Reno divorce should be obtained severing their marriage relations, and while she was living at the home of the Villapianos, and at a time when her husband, according to her statement, had been untrue to her, she committed adultery with Dr.

Villapiano, who at the time was an unmarried man, whereupon as soon as the divorce was obtained between herself and her husband she and Dr. Villapiano were married. No other blot upon her history has been shown against her, and it appears that since that time her conduct, as well as that of her husband, Dr. Villapiano, has been in every particular proper and praiseworthy. Her neighbors give evidence to this effect.

Upon this subject the lower court says:

"Dr. and Mrs. Villapiano are happily married and enjoy the respect and esteem of their friends and neighbors, and bear an excellent reputation in Asbury Park. They have a nice comfortable home, located in the residential district, and within easy distance of schools and churches.

"Dr. Villapiano is devoted to the petitioner, his wife, and earnestly approves of her desire to have the custody of the child and expresses a willingness to assist her. He is very fond of the boy.

"The court has had the opportunity to observe these parties as they appeared and testified as witnesses. By her appearance and manner of testifying, Mrs. Villapiano commended herself to the court as a fit and proper person to have the custody of this boy. Dr. Villapiano makes a most favorable impression. His demeanor generally throughout this hearing inspires confidence in his integrity."

At the trial the boy himself testified strongly in favor of his grandfather, saying among other things that his mother had left his father and broken his heart. The trial justice, in commenting upon this testimony of the boy, expressed the opinion that it simply followed that of his grandfather, and because of his immaturity should not be given great weight in the decision of the case.

It was suggested at the argument that the grandfather and his family are Catholics, and that they are naturally desirous of retaining the custody of the boy in order to have him reared in that church. This sentiment is entitled to respectful consideration, but it does not seem applicable to the present case, inasmuch as Dr. Villapiano is willing that the child shall be reared in the Catholic Church, and that having had his own child baptized a Catholic is evidence of his willingness so to do.

It should be added that the conduct of the grandfather in the unhappy circumstances disclosed in this case reflects no discredit upon him. His action has doubt-

less been the result of his affection for the boy and of his conviction that the boy's future would be safer in his care than in the care of another. However, for the reasons above stated, we are constrained to hold that the boy's mother has prior claim to the custody of her son.

The decree of the lower court therefore is affirmed with costs.

VAN ORSDEL, Associate Justice, dissents.