**Marilyn Atwood COLES, Appellant,**

v.

**Marvin J. COLES, Appellee.**

**No. 3562.**

District of Columbia Court of Appeals.

Argued Sept. 9, 1964.

Decided Nov. 2, 1964.

David G. Bress, Washington, D. C., with whom Abe Fortas, Leonard Braman and J.

H. Krug, Washington, D. C., were on the brief, for appellant.

Roger Robb, Washington, D. C., with whom Kenneth Wells Parkinson, Washington, D. C., was on the brief, for appellee.

Before HOOD, Chief Judge, and QUINN and MYERS, Associate Judges.

HOOD, Chief Judge.

The parties to this appeal are husband and wife and are the parents of a little girl who is now about four years of age. After months of marital discord the parties separated, and in the trial court each sought custody of their daughter.[1]

The trial lasted many days and is reported in over 2,000 pages of transcript. Each party sought to prove his or her qualification for custody of the child and the other's lack of qualification. To this end there was the testimony of the parties, their relatives and friends, and that of adult psychiatrists, a child psychiatrist, a psychologist, a doctor, a minister, a baby sitter, detectives, the guardian ad litem who had been appointed for the child early in the litigation, and others. All phases of the backgrounds and lives of the parties were fully explored.

The trial court in an extensive opinion reviewed the evidence, made some preliminary findings, and then made the following fundamental findings: (1) The child has always received excellent physical care and has never been neglected. (2) Each parent is devoted to the child. (3) Neither parent is disqualified to have custody by reason of any physical, mental or moral infirmity. (4) That the best interests of the child will be served by awarding custody to the father.

In making this last finding, the court said:

"This Court finds that the best interest of this child lies in placing it in an environment in which it can have love, security, discipline, adequate care and

1. Another phase of the litigation between the parties was before us in Coles v. Coles, D.C. App., 202 A.2d 394.

attention and proper training, where relative stability can be maintained, and objective and positive influences may be brought upon her. The atmosphere must be as free of tensions, bitterness and hostility towards the other party as is possible under the circumstances. The child should be taught to love and respect each parent and the opportunities for its mind to be poisoned against either parent should be minimized.

"It is the finding of the Court that the home of the father and his plan for future development of this child offers the greater potential for the achievement of these objectives."

In accordance with the court's findings, judgment was entered awarding permanent custody to the father. The mother was given the right of visitation two afternoons each week and the right to have the child with her every other week end. In addition, the mother was given temporary custody during the summer months between the closing and the opening of school.

The mother has appealed. Errors are alleged with respect to the exclusion of certain evidence and with respect to the appointment, and testimony, of the guardian ad litem; but we find no substantial error regarding these matters. The chief claim of error essentially is that in view of the finding that the mother was not unfit to have custody, it was error as a matter of law to deny custody to her and that such denial constituted an abuse of discretion.

The mother's argument is that the law requires that the custody of a child of tender years be awarded the mother where she is found to be a fit custodian and where there is no finding that her custody would endanger the child. As a corollary she argues that it was an abuse of discretion not to award custody because "the presumption that small children are better off with their mother is entitled to weight";[2] and that such presumption is especially strong here because (1) the child is a female, (2) the mother is twenty years younger than the father, (3) by agreement of the parties the child is being reared in the religious faith of the mother, a different faith from that of the father, and (4) because of the testimony of a psychiatrist who examined the father, that the child would be better off with the mother, and the testimony of a child psychiatrist that it would be to the child's best interest that she be with her mother.[3] Conceding that the mother's argument may appear quite appealing and persuasive to us, but recognizing that it was not sufficiently persuasive for the trial court, we come to the question whether as a matter of law the mother was entitled to custody, or, put another way, whether denial of custody to her was, as a matter of law, an abuse of discretion.

Since what has been termed the classic decision on the subject, Chapsky v. Wood, 26 Kan. 650 (1881), most jurisdictions, including this jurisdiction,[4] have accepted Judge Brewer's pronouncement that in child custody cases: "Above all things, the paramount consideration is, what will promote the welfare of the child?" This principle is easily stated but its application in a particular case presents one of the heaviest burdens that can be placed on a trial judge. Out of a maze of conflicting

---

2. Boone v. Boone, 80 U.S.App.D.C. 152, 154, 150 F.2d 153, 155 (1945).

3. The mother's brief refers to the testimony of these two psychiatrists as being uncontradicted. Such testimony, however, must be viewed in the light of the testimony of another psychiatrist that the father would be "an eminently fit father or parent to have custody of the child," and the testimony of the psy- chologist that the father is a "good father."

4. Wells v. Wells, 11 App.D.C. 392 (1897); Seeley v. Seeley, 30 App.D.C. 191 (1907), cert. denied 209 U.S. 544, 28 S.Ct. 570, 52 L.Ed. 919; Snow v. Snow, 52 App.D.C. 39, 280 F. 1013 (1922); Holtsclaw v. Mercer, 79 U.S.App.D.C. 252, 145 F.2d 388 (1944); Knight v. Knight, D.C.Mun. App., 134 A.2d 380 (1957).

testimony, usually including what one court called "a tolerable amount of perjury," the judge must make a decision which will inevitably affect materially the future life of an innocent child. In making his decision the judge can obtain little help from precedents or general principles. Each case stands alone. After attempting to appraise and compare the personalities and capabilities of the two parents, the judge must endeavor to look into the future and decide that the child's best interests will be served if committed to the custody of the father or mother. He starts with the premise, as did the trial judge here, that the best interests of the child would be served by living in a united home with the affection, companionship and care of both father and mother, but that possibility has been eliminated before the case reaches the judge. So, the question for him is what is best for the child within the limitations presented. When the judge makes his decision, he has no assurance that his decision is the right one. He can only hope that he is right. He realizes that another equally able and conscientious judge might have arrived at a different decision on the same evidence.[5]

From what we have said, we are forced to the conclusion that the law of this jurisdiction does not compel the award of custody of a small child to the mother, although she is a fit custodian, if the trial court on consideration of all the evidence, concludes that the best interests of the child will be served by awarding custody to the father. And we cannot say that the failure to award custody to the mother was an abuse of discretion. To do so would be to substitute our collective judgment for that of the trial judge. The law entrusts that grave decision to the sound judgment of the trial court. We find nothing in the record which would justify us in disturbing it.

Affirmed.

---

5. In this connection it may be noted that, prior to this hearing, when the father was urging Judge Burnett, who originally had the question of custody before him, to decide the question of custody, the judge, although declining because of matters not here pertinent, remarked that the courts had consistently ruled that a child of tender years should be given to the custody of the mother, that if this child were given to the father she would be in the care of a stranger during the day, and would be denied the care and affection of her mother. This at least indicates that Judge Burnett might have arrived at a decision different from that of Judge Waddy.