Carolyn **DORSETT**, Appellant,

v.

Eugene A. **DORSETT**, Appellee.

No. 5738.

District of Columbia Court of Appeals.

Argued June 23, 1971.

Decided Sept. 22, 1971.

---

Samuel Intrater, Washington, D. C., with whom Albert Brick, Washington, D. C., was on the brief, for appellant.

J. Leon Williams, Washington, D. C., for appellee.

Before FICKLING, KERN and REILLY, Associate Judges.

REILLY, Associate Judge:

In a decree for divorce obtained by the husband on the ground of one year's voluntary separation,[1] the court awarded custody of the parties' eight-year-old son (an only child) to the husband. The wife's appeal is directed solely to the custodial portion of the decree.

The parties were married in 1961, and their child, Eric, was born the following year. The couple and the boy lived together in an apartment until the spring of 1968, the husband supporting the family from his wages as an electronic technician in the daytime and from extra money paid him evenings as a professional singer at different musical events. In May, 1968, the husband moved out of the marital abode permanently, but continued to pay the apartment rent. He visited his son at regular intervals.

On the 4th of July, 1969, the husband picked up the boy at the apartment at a time when his wife had left the child in the custody of a baby-sitter. When he returned with the boy the next day, the wife apparently annoyed at his having taken the child while she was away, told them both to go back where they had come from.[2] The husband then took Eric to live with him at his own mother's house, where he had been staying. The wife did not get in touch with her son for three weeks, and thereafter visited him infrequently until November, 1969, when she appeared at the house of the paternal grandmother and removed Eric from her custody without advance notice.

The wife, having given up the marital apartment in the meantime, she and Eric made their home in the household of her mother until July 1970, when this case went to trial. Evidently the boy's removal in the middle of the fall school term necessitated his transfer to another school. As this was not effectuated for another three weeks, the husband and his mother accused the wife of neglecting the boy's education, although she contended at the trial that the hiatus was exaggerated and was due to the fact that the child was too sick to attend classes.

The trial judge believed the husband's testimony and, from the bench, indicated some feeling that the wife was an evasive witness. In orally summarizing the testimony, he expressed the view that the wife's failure to take prompt steps to reclaim her son when her husband took the boy to live with his mother and her abrupt

---

1. D.C.Code 1967, § 16–904.

2. The wife denied having refused to let Eric return, but the court apparently accepted the husband's version of this incident.

method of removing him several months later betrayed a lack of maternal solicitude. He specifically declined, however, to characterize the wife as an unfit parent. He indicated that he had been favorably impressed by the character of the husband's mother, the person in whose care the boy would be entrusted while the husband was at work. Accordingly he found that it was in the best interest of the son to return him to the custody of the father, and so ordered.

On consideration of the record, briefs, and oral argument, we affirm.

■ The paramount consideration in child custody cases is the welfare of the child. Although, as appellant contends, there is a presumption in this jurisdiction that children of tender years are better off with their mothers[3]—absent a finding that the mother is unfit—that presumption does not preclude a trial judge from considering evidence pointing to another conclusion. As our summary of the record indicates, there was some evidence of that sort here.

■ In child custody cases, this court has accorded great deference to the trial judge, for in addition to his evaluation of the crediblity of witnesses, the primary responsiblity of the judge in any case tried without a jury, only the trial judge has an opportunity to appraise at first hand the character of the parties. We cannot say that in this instance the trial judge abused his discretion, even though other evidence in the record might have led us to uphold a decision going the opposite way.

The leading case in this jurisdiction is Coles v. Coles, D.C.App., 204 A.2d 330 (1964), sustaining an award of custody of a four-year-old girl to her father. There, this court observed, *id.* 331–332:

Since what has been termed the classic decision on the subject, Chapsky v. Wood, 26 Kan. 650 (1881), most jurisdictions, including this jurisdiction, have accepted Judge Brewer's pronouncement that in child custody cases: "Above all things, the paramount consideration is, what will promote the welfare of the child?" This principle is easily stated but its application in a particular case presents one of the heaviest burdens that can be placed on a trial judge. Out of a maze of conflicting testimony, usually including what one court called "a tolerable amount of perjury," the judge must make a decision which will inevitably affect materially the future life of an innocent child. In making his decision the judge can obtain little help from precedents or general principles. Each case stands alone. After attempting to appraise and compare the personalities and capabilities of the two parents, the judge must endeavor to look into the future and decide that the child's best interests will be served if committed to the custody of the father or mother. He starts with the premise, as did the trial judge here, that the best interests of the child would be served by living in a united home with the affection, companionship and care of both father and mother, but that possibility has been eliminated before the case reaches the judge. So, the question for him is what is best for the child within the limitations presented. When the judge makes his decision, he has no assurance that his decision is the right one. He can only hope that he is right. He realizes that another equally able and conscientious judge might have arrived at a different decision on the same evidence. (Footnotes omitted.)

In our opinion, the observations and holding of this court in *Coles* are equally applicable to the instant case.

Affirmed.

3. Boone v. Boone, 80 U.S.App.D.C. 152, 150 F.2d 153 (1945). Eric was eight years old at the time of trial. He is now nine or ten, and perhaps will need his father, with whom he has lived since the spring of 1970 pursuant to the court's decree, as much as his mother, from this time on.