Lawrence BAZEMORE, Appellant,

v.

Sharon DAVIS, Appellee.

No. 12093.

District of Columbia Court of Appeals.

Argued Before the Division Dec. 15, 1977.

Argued En Banc July 10, 1978.

Decided Dec. 1, 1978.

Fortunato J. Mendes, Washington, D. C., for appellant.

Richard S. Bromberg, Washington, D. C., with whom Glenn H. Angelo and Coolidge N. McCants, Washington, D. C., were on the brief, for appellee.

John W. Karr, Washington, D. C., appointed by this court, amicus curiae for appellant.

Charles H. Mayer, Washington, D. C., appointed by this court, amicus curiae for appellee.

Before NEWMAN,* Chief Judge, and KELLY, KERN, GALLAGHER,* NEBEKER, YEAGLEY, HARRIS, MACK * and FERREN, Associate Judges.

MACK, Associate Judge:

Circumstances of this case have precipitated en banc consideration of the issue of whether, in child custody disputes between natural parents, there is a valid presumption that the interest of a child of tender years is best served in the custody of the mother.

* (Denotes members of the original division.)

The dispute arose on April 18, 1975, when appellee Sharon Davis sued appellant Lawrence Bazemore to regain custody of their minor child, Tonya. The case was heard on appellee's motion for pendente lite custody by Judge Washington on February 10, 1976. As a result of that hearing, Judge Washington determined that

. . . the health and safety of the child are presently better served at the home of [appellant] than at the home of [appellee];

. . . the environment for the child is better in [appellant's] home than in [appellee's] home at this time;

. . . permanent custody of Tonya can only be awarded to either party after the Intra-Family and Neglect Branch, Social Services Division, Superior Court of the District of Columbia, investigates the home of both [appellee] and [appellant] and makes a recommendation available to this court; . . . .

Accordingly, on May 10, 1976, Judge Washington issued an order awarding temporary custody to appellant Lawrence Bazemore, pending an investigation by the Intra-Family and Neglect Branch of the Social Services Division of the Superior Court. On August 20, 1976, the Intra-Family and Neglect Branch filed a memorandum recommending that permanent custody of the child be awarded to the father, Lawrence Bazemore. However, because of the intervening illness of Judge Washington, trial was held before Judge Hamilton on January 12, 1977, at the conclusion of which Judge Hamilton awarded custody to the mother, Sharon Davis. It is this last decision which was appealed, and which has now been reviewed by both the original division and the court en banc. We reverse and remand.

## I.

The record reveals that the child, Tonya, was born on October 18, 1972, out of wedlock. From the date of her birth until July 1974, Tonya lived with her mother, appellee Sharon Davis, in the home of Ms. Davis' parents. Throughout this period Ms. Davis was attending school, and Ms. Davis' mother took care of Tonya. In August 1974, Ms. Davis voluntarily relinquished custody of Tonya to appellant Lawrence Bazemore, the child's father, who also was living in his parents' home. As Mr. Bazemore was both going to school and working, his mother took care of Tonya.

At the time of the trial—January 1977—Tonya was still living with her father, Lawrence Bazemore, in the home of his parents, and was still being cared for by her paternal grandmother. Tonya's mother, Sharon Davis, was also still living with her parents. She was still attending school, but had, in addition, made arrangements to work part-time. Ms. Davis acknowledged that if she regained custody of Tonya, the child would be cared for once more by her maternal grandmother.

The trial court ruled from the bench in favor of the child's mother, giving the following explanation:

Now, as you both know, in cases of this nature, the law prefers the mother—the natural mother as the custodian of the child and only denies to the natural mother the custody of the child when it can be shown and demonstrated by reasonable convincing and clear evidence that such natural mother is unfit as a parent. That is to say, such natural mother is either unwilling or unable to discharge those duties and responsibilities normally required in order to properly and adequately in a reasonable manner provide for the child. And although defendant made that allegation in his answer in response to this petition of custody by the parent, it does not appear to me the evidence has clearly and convincingly established, as it must do under the law, that the natural mother is unfit—that is to say either unwilling or unable to perform those duties reasonably necessary for the welfare of the child.

\* \* \* \* \* \*

The next inquiry is what, under such circumstances, would be in the best interest of the child; but, we don't even reach that point under the law because, as I

stated, the law does not deprive a natural mother—that is one of the rights of motherhood which only mothers can have, the natural right to have their offspring. And, unless it can be demonstrated that they are unfit to have it and, unfortunately, the civil law has incorporated that the natural right of the mother to have custody of her offspring. That is the natural and the civil law.

So, under the circumstances, gentlemen, I don't know anything that I can do except give this child to its mother . · ·

In support of its ruling, the court prepared a brief written order citing one case. The order reads, in relevant part, as follows:

Undoubtedly, the mother of a minor child of tender years has the strongest claim to custody of her child and ordinarily cannot be deprived of that custody except upon a showing that she is unfit or unable to care for the child. (*Matter of N.M.S.,* [D.C.App.] 347 A.2d 924). Here there being no such showing, it is hereby

ORDERED, ADJUDGED, and DECREED that Ms. Sharon Davis be awarded custody of the minor child, Tonya La-Shurn Davis.

## II.

■ In their briefs and in oral argument before this court, all parties to this case agree that the proper standard to be applied in custody disputes between the natural mother and natural father of a child is the best interest of the child. The best-interest-of-the-child concept has, indeed, been the standard in this jurisdiction since the

beginning of the century. *Ross v. Ross,* D.C.App., 339 A.2d 447, 448 (1975); *Monacelli v. Monacelli,* D.C.App., 296 A.2d 445, 447 (1972); *Rzeszotarski v. Rzeszotarski,* D.C.App., 296 A.2d 431, 439 (1972); *Lindau v. Lindau,* D.C.App., 286 A.2d 864, 865 (1972); *Dorsett v. Dorsett,* D.C.App., 281 A.2d 290, 292 (1972); *Coles v. Coles,* D.C. App., 204 A.2d 330, 331 (1964); *Bartlett v. Bartlett,* 94 U.S.App.D.C. 190, 192–93, 221 F.2d 508, 510–12 (1954); *Stickel v. Stickel,* 18 App.D.C. 149, 151 (1901); *Wells v. Wells,* 11 App.D.C. 392, 395 (1897). *See also Utley v. Utley,* D.C.App., 364 A.2d 1167, 1170 (1976) and cases cited therein. *Cf. In re J.S.R.,* D.C.App., 374 A.2d 860, 863 (1977). The best interest of the child is also the standard used in custody disputes between the natural father and mother of an illegitimate child. *See Barrett v. Koppen,* D.C. Mun.App., 154 A.2d 132 (1959).[1]

■ In the instant case, the trial court relied on the proposition that a fit mother can never be deprived of custody, and explicitly refused to reach the issue of the best interest of the child. In this, the court clearly erred.[2]

Counsel for appellee, however argues that in spite of the trial court's error we can affirm that court's decision. The argument can be stated as follows: (A) the trial court explicitly found that in most respects the parties were similarly situated; (B) there is, in this jurisdiction, a presumption that young children are better off with their mother; (C) accordingly, we can infer that in this case it would be in Tonya's best interest to go with her mother.

1. Although it did not become effective until after the trial in this case, the District of Columbia Marriage and Divorce Act deems a child born either in or out of wedlock as the legitimate child of its father and mother. District of Columbia Marriage and Divorce Act, D.C.Law No. 1–107, § 105 (amending D.C.Code 1973, § 16–908).

2. The trial court relied upon *In re N.M.S.,* D.C. App., 347 A.2d 924 (1975). *In re N.M.S.,* however, did not deal with the rights of a natural mother as against a natural father, but with the

rights of a natural parent as against third parties. We do not, in this case, need to delve into that controversial area, for whatever the appropriate standard in disputes between natural parents and third parties, *see Quilloin v. Walcott,* 434 U.S. 246, 98 S.Ct. 549, 555, 54 L.Ed.2d 511 (1978); *Smith v. Organization of Foster Families for Equality and Reform,* 431 U.S. 816, 833–38, 97 S.Ct. 2094, 53 L.Ed.2d 14 (1977), as between the natural mother and natural father, the best interest of the child is still determinative.

## III.

As to appellee's first assertion, the trial court did not find that in *all* respects appellant and appellee were similarly situated. Rather, the court found that with respect to financial, educational, cultural, and familial circumstances, there was no substantial difference between the parties. In spite of these similarities, at least one extremely important difference between the circumstances of appellant and appellee is clear from the face of the record, namely, that at the time of the trial, the child, then over four years old, was living with the father and had been living with him for the previous two and a half years. As to this, the court significantly noted: "Bouncing this child back and forth between mother and father, paternal and maternal grandmothers, has not and will not be healthy for her. Each time she is moved, she gets a scar and who knows whether if ever it will be healed."

As to the second part of appellee's argument, it is true that in this jurisdiction there is, at present, a presumption that small children are better off with their mother. *Ross v. Ross, supra* at 448; *Monacelli v. Monacelli, supra* at 447; *Rzeszotarski v. Rzeszotarski, supra* at 439; *Lindau v. Lindau, supra* at 865; *Dorsett v. Dorsett, supra* at 292; *Coles v. Coles, supra* at 331; *Boone v. Boone,* 80 U.S.App.D.C. 152, 154 150 F.2d 153, 155 (1945). It is this presumption that we now reexamine. *See generally* Roth, *The Tender Years Presumption,* 15 J.Fam.L. 423 and articles cited therein at 423 n. 1 (1976–77); *Johnson v. Johnson,* 564 P.2d 71, 75 (Alaska 1977); *Strand v. Strand,* 41 Ill.App.3d 651, 656, 355 N.E.2d 47, 52 (1976); *Pratt v. Pratt,* 29 Ill.App.3d 214, 216, 330 N.E.2d 244, 246 (1975); *In re Marriage of Bowen,* 219 N.W.2d 683, 688 (Iowa 1974); *State ex rel. Watts v. Watts,* 77 Misc.2d 178, 350 N.Y.S.2d 285 (Fam.Ct. 1973); *Commonwealth ex rel. Spriggs v. Carson,* 470 Pa. 290, 368 A.2d 635, 639 (1977) (opinion of Nix, J.; three judges concurring in the result).

Under common law, there was no presumption in favor of the mother. To the contrary, *the father, as a matter of right,* was entitled to the custody of his children. Roth, *The Tender Years Presumption, supra* at 424–28; Annot., 70 A.L.R.3d 262, 267 (1976); 46 C.J. *Parent-Child* § 10(b) at 1225–29 (1928); 19 C.J. *Divorce* § 798(b) at 344–45 (1920). This was also the law in the District of Columbia. *Barney v. DeKraft,* 6 D.C. (1 Mackey) 361, 367 (1862); *Mauro and Forrest v. Ritchie,* 3 D.C. (3 Cranch) 147, 155–56, 158 (1827), *appeal dismissed,* 2 Pet. 243, 7 L.Ed. 411 (1829).[3]

Towards the end of the nineteenth century, however, the traditional rule that the father was always entitled to custody began to give way to a standard under which the best interests of the child controlled. Roth, *The Tender Years Presumption, supra* at 425; Annot., 70 A.L.R.3d 262, 267 (1976). In the District of Columbia, this shift can be seen in *Wells v. Wells, supra* at 395, which was decided in 1897, and *Stickel v. Stickel, supra* at 151, which was decided in 1901.

Gradually, thereafter, in fact first, and then in law, the standard favoring the best interest of the child evolved into a preference for the mother. Roth, *The Tender Years Presumption, supra* at 425; Annot., 70 A.L.R.3d 262, 267–68 (1976). In this jurisdiction, although the best interest of the child standard persisted, and still persists, a presumption developed that the child's welfare was generally best served by

---

**3.** By the law of England there are various kinds of guardians. 1, Guardian in chivalry; 2, in socage; 3, by nature; 4, for nurture . . . .

　　　*　　*　　*　　*　　*　　*

　　3. Guardianship by nature, existed only where the ward was heir apparent of the guardian, and extended only to the person of the ward. *The father was always guardian by nature* of the person of his heir apparent . . .

　　　*　　*　　*　　*　　*　　*

Of the four kinds of guardianship at common law, it is believed that only one exists in this country, namely, guardianship by nature . . . . [G]uardianship by nature exists in this country, and applies to all the children. [*Mauro and Forrest v. Ritchie, supra* at 155–56, 158 (emphasis supplied).]

awarding custody to the mother. The first mention of the presumption is in a 1945 case. *Boone v. Boone, supra,* 80 U.S.App. D.C. at 154, 150 F.2d at 155. There, the court stated, in dictum, that "[u]ndoubtedly, the presumption that small children are better off with their mother is entitled to weight." *Id.* In support of this proposition, the *Boone* court cites one case, which is inapposite,[4] and offers no explanation.

Since *Boone,* the presumption in favor of the mother has been alluded to in many District of Columbia cases. *Ante* at 1379. Yet in no case has any explanation of the rationale behind the presumption been offered.

McCormick, in his treatise on evidence, suggests that there are four principal reasons for the creation of presumptions. First, some presumptions are created to correct an imbalance resulting from a party's superior access to the proof. Second, notions, usually implicit rather than expressed, of social and economic policy incline the courts to favor one contention by giving it the benefit of a presumption, and correspondingly to handicap the disfavored adversary. Third, a presumption may be created to avoid an impasse, to reach some result, even though it is an arbitrary one. Lastly, a presumption may be based on a judicial belief that proof of some fact renders the inference of the existence of another fact so probable that it is sensible and time-saving to assume the truth of the other fact until the adversary disproves it. *See* C. McCormick, Handbook of the Law of Evidence at 806–07 (2d ed. 1972).

The first rationale suggested by McCormick would not justify a presumption here, as both parents have equal access to proof concerning their child's best interests.

Nor do the second, third or fourth reasons survive close scrutiny as a valid basis for the presumption here at issue, for they would be either arbitrary, or based on un-

warranted assumptions. For instance, courts may have assumed that ". . . a mother keeps the home, performs household duties, and will have more time to devote to the children and their welfare." *In re Marriage of Bowen, supra* at 688. Such an assumption, however, fails to take into account the realities of the divorced or single mother, who must assume the obligations of both parents, and is often not at home caring for the child but out working. *See* Roth, *The Tender Years Presumption, supra* at 452–56; Podell, Peck and First, *Custody—To Which Parent?,* 56 Marq.L. Rev. 51, 53–54 (1972); Note, *Measuring the Child's Best Interests—A Study of Incomplete Considerations,* 44 Den.L.J. 132, 139–42 (1967); Behles, *Equal Rights in Divorce and Separation,* 3 N.M.L.Rev. 118, 133 (1973).

If the assumption that female parents are the best parents is based upon some special judicial insight into the workings of human nature, it fares no better. Eminent child psychiatrists have demonstrated that what a child needs is not a mother, but someone who can provide "mothering." Mothering refers to the "nurturing of the human potential of every baby to love, to trust, and to bind himself to human partnership," Fraiberg, Every Child's Birthright: In Defense of Mothering at xii (1977), or the giving of consistent and predictable affection, acceptance, approval, protection, care, control and guidance. *See* Howell, *Can Fathers Be Parents?* Justice Vol. II, No. 1 (1974). And the ability of a person to provide "mothering" does not necessarily correspond to the gender of the parent or the biological relationship between adult and child. *See generally,* Fraiberg, *supra; see also State ex rel. Watts v. Watts, supra,* 77 Mich.2d at 180–81, 350 N.Y.S.2d at 288–90.

But it is urged upon us that the presumption is a useful tool for the resolution of custody cases. We do not think that it is. For even if the presumption had some in-

---

4. The case cited is *Sardo v. Villapiano,* 65 App. D.C. 121, 122, 81 F.2d 255, 256 (1935), where is was said that

> [I]t is established both by statute and common law that *as between the grandfather and* the mother the child should be intrusted to the mother, unless such a course is inconsistent with the child's welfare. Title 15, c. 3, § 31, D.C.Code 1929. [Emphasis supplied.]

determinable validity, in unspecifiable circumstances, it could serve no purpose other than to save time. *See* McCormick, *supra* at 807. But this saving of time is accomplished at the price of tremendous legal and logical confusion,[5] and accompanied by an intolerable risk of unnecessary error.

In the first place, a rule of law providing that a mother has the strongest claim to the custody of her child obscures, and indeed may be inconsistent with the basic tenet, overriding all others, that the best interest of the child should control. *See In re Marriage of Bowen, supra* at 688. Such a rule carries a ring of proprietorship and focuses attention upon the mother's emotional needs rather than upon those of the child. *See* J. Goldstein, A. Freud and A. Solnit, Beyond the Best Interests of the Child at 12 (1973).

Besides obscuring the basic issue in the case, the presumption is itself obscure in application. Thus, as *amicus curiae* for appellant has pointed out, none of our cases define what a child of tender years is. Other jurisdictions, in the absence of statutes, have struggled with the issue of whether the tender years doctrine is applicable only to infants, or only to children under five, or only to children under ten. *See* Annot., 70 A.L.R.3d 262, 287–93. There are likewise questions as to whether the presumption is controlling or persuasive, whether factors such as the sex of the child affect its existence or weight, whether the presumption is applicable only when other things are equal, and whether a showing of the mother's unfitness[6] is a sine qua non for the rebuttal of the presumption. *See* Annot., 70 A.L. R.3d 262, 278–93. Compare generally the verbal formulations and holdings of *In re N.M.S.*, D.C.App., 347 A.2d 924, 927; *Rzeszotarski v. Rzeszotarski, supra* at 439; *Coles v. Coles, supra* at 331.

Finally, the presumption facilitates error in an arena in which there is little room for error. A court in a child custody case acts as *parens patriae. Rzeszotarski v. Rzeszotarski, supra* at 439; *Boone v. Boone, supra* 80 U.S.App.D.C. at 154, 150 F.2d at 155. It is not enough to suggest that the task of deciding custody is a difficult one, or that the use of a presumption would result in a correct determination more often than not.[7]

---

**5.** As to the confusion which clouds the subject of presumptions generally, Thayer wrote:

that the numberless propositions figuring in our cases under the name of presumptions are . . . quite too loosely conceived of and expressed, to be used or reasoned about without much circumspection. Many of them are grossly ambiguous, true in one sense and false in any other; some are not really presumptions at all, but only wearing the name; some express merely a natural probability, and others, for the sake of having a definite line, establish a mere rule of legal policy; very many of them . . . lay down a *prima facie* rule of the substantive law, and others, a rule of general reasoning, and of procedure, founded on convenience or probability or good sense . . . .. Some are maxims, other mere inferences of reason, others rules of pleading, others are variously applied . . . .. Among things so incongruous as these and so beset with ambiguity there is abundant opportunity for him to stumble and fall who does not pick his way and walk with caution. [J. Thayer, Preliminary Treatise on Evidence, at 351–52 (1898).]

*See also* Morgan, *Presumptions*, 12 Wash.L.R. 255, 255 (1937).

**6.** It is the suggestion that there must be a showing of maternal unfitness that has spawned one of the most unfortunate aspects of the presumption—the attack by the father upon the character and conduct of the mother, an attack which necessarily aggravates the acrimony between the parents, and can only be to the detriment of the child. *See, e. g., Braiman v. Braiman*, 44 N.Y.2d 584, 407 N.Y.S.2d 449, 378 N.E.2d 1019 (1978).

**7.** Let us give a prosaic example, taken with modification from *Sargent v. Massachusetts Acc. Co.*, 307 Mass. 246, 249, 29 N.E.2d 825, 827 (1940). *See also* the discussion of this case in Ball, *The Moment of Truth, Probability Theory and Standards of Proof*, 14 Van.L.Rev. 807, 822–23 (1961). Suppose we are told that according to one study, 99% of the cars in the United States are black. We may have serious misgivings about the statistic because it is based on an arguably skewed sample. But let us assume, for now, that the study had some validity. If, then, we have no other information as to what color a given car is, we should guess it was black. But suppose instead, we had a car before us, and we closed our eyes and made a guess based on the probabilities. Truly by proceeding in this manner, we would guess correctly more often than not. It is equally true however, if we opened our eyes we could make a more accurate determination.

A norm is ill-suited for determining the future of a unique being whose adjustment is vital to the welfare of future generations. Surely, it is not asking too much to demand that a court, in making a determination as to the best interest of a child, make the determination upon specific evidence relating to that child alone. As one court has aptly noted, magic formulas have no place in decisions designed to salvage human values. *Lemay v. Lemay*, 109 N.H. 217, 218, 247 A.2d 189, 191 (1968).

█ For the reasons stated we now direct that, in a dispute between a natural mother and father over custody of their child, the trial courts shall decide the delicate question of what is the child's best interests solely by reference to the facts of the particular case without resort to the crutch of a presumption in favor of either party. *See* the District of Columbia Marriage and Divorce Act, *supra* § 108(d) and § 109 (amending D.C. Code 1973, §§ 16–911(4) and –914). Any of the prior decisions inconsistent herewith are hereby overruled.

### IV.

In conclusion, the law is that in a dispute between the biological parents over custody, the sole consideration is the best interest of the child. In the instant case, the trial court explicitly refrained from deciding what was in Tonya's best interests. Nor do we think that, on the basis of this record, we can say with assurance what would be best for the little girl. In these circumstances, we must remand the case to the trial court for a new determination of the question of custody.

*It is so ordered.*

GALLAGHER, Associate Judge, with whom Associate Judges NEBEKER and HARRIS join, dissenting in part and concurring in the result:

There is perhaps no issue more important or more perplexing to come before the trial court than deciding on the custody of children of tender years. What standards to apply in awarding custody of a young child is a problem which has troubled judges at least since the time of King Solomon. In what has been termed in legal quarters as the leading case in this jurisdiction on child custody, this court said:

> Out of a maze of conflicting testimony, usually including what one court called "a tolerable amount of perjury," the judge must make a decision which will inevitably affect materially the future life of an innocent child. In making his decision the judge can obtain little help from precedents or general principles. Each case stands alone. After attempting to appraise and compare the personalities and capabilities of the two parents, the judge must endeavor to look into the future and decide that the child's best interests will be served if committed to the custody of the father or mother. He starts with the premise, as did the trial judge here, that the best interests of the child would be served by living in a united home with the affection, companionship and care of both father and mother, but that possibility has been eliminated before the case reaches the judge. So, the question for him is what is best for the child within the limitations presented. When the judge makes his decision, he has no assurance that his decision is the right one. He can only hope that he is right. [*Coles v. Coles*, D.C.App., 204 A.2d 330, 331–32 (1964).]

The majority has entered into this area of the law unnecessarily and, in an opinion containing mistaken assumptions and "straw men" erected so as to be knocked down, has sought to change existing law on child custody.

I have considerable difficulty in this case on two scores, (a) the way it got here procedurally, and (b) the majority opinion on the merits. I will discuss first the procedural anomaly, which is a matter of concern.

A. By a divided vote, the majority took this court en banc in this case sua sponte. I find this to be of interest because appellant had not so much as raised in his brief the

issue which became the en banc issue, *i. e.*, the validity of the tender years presumption. To the extent it was even mentioned in the brief it was, if anything, accepted and certainly not attacked. Consequently, we are here en banc on an issue generated by the court majority, not appellant.[1] This court is here to decide issues, not create them.

As a result, what we have is essentially an advisory opinion stating it is changing the law in relation to child custody cases. Advisory opinions, after all, are "bound to move in an unreal atmosphere." Frankfurter, *A Note on Advisory Opinions,* 37 Harv.L.Rev. 1002, 1006 (1924). "Every tendency to deal with [litigated cases] abstractly, to formulate them in terms of sterile legal questions, is bound to result in sterile conclusions unrelated to actualities." *Id.* at 1003. This case is no exception.

What is more disturbing is we have two very recent pieces of legislation in this jurisdiction relating specifically to child custody in the 1977 Marriage and Divorce Act.[2] It is inevitable that soon this court will have a case necessitating a construction of this new legislation on child custody. One has to wonder why the court chose not to await the early arrival of such a case. As a result, we will later have to construe the legislation in an atmosphere complicated by this decision—though this of course will be no reason not to unravel the situation at the proper time.

It is the holding of the majority opinion that the so-called tender years presumption in this jurisdiction is abolished. Since I do not find that the majority first explored in any depth what it considered it was abolishing, I will undertake to do so. I will begin first by tracing the decisions in this jurisdiction where reference is made to a tender years presumption without regard to

whether the cases involve a contest between husband and wife over child custody or a contest between a mother and third persons (e. g., foster parents).[3] After doing this, there will be a discussion of the evidentiary nature of presumptions in general. This is followed by an analysis of the way the so-called tender years presumption has been applied in this jurisdiction in order to determine whether it is in reality a presumption, as that term is commonly used, and if not, what its actual significance is, and has been, in these child custody cases over recent years.

B. In this case the custody dispute is between the unmarried parents of a female child, who were about 16 years old at the time of the child's birth. The daughter will soon celebrate her sixth birthday. During her first two years, the infant resided with her mother in the home of the maternal grandparents. The mother was still attending high school at the time. After 21 months, the mother voluntarily relinquished custody of the child to the natural father (and the father's mother), apparently because of friction in the mother's home with her parents. Nine months later the mother filed a complaint to regain custody. It will be apparent when I get to the facts that what lay at the root of this case, realistically, was which *grandmother* of the infant was going to care for the child in day-to-day living, not which unmarried parent. Consequently, it is hardly a vehicle for an important discussion of the law on parental custody.

The Social Services report compiled before trial showed the father by that time to be a college student employed during the summer, with the child being cared for by the paternal grandmother. The report recommended that the child "remain in permanent custody of [the father] *and the pater-*

---

1. In opening its opinion the court puts it this way: "Circumstances of this case have precipitated en banc consideration of the issue . .."

2. D.C.Law 1–107 (1977).

3. As the discussion of both types of custody disputes will demonstrate, the fact of motherhood carries most weight in this jurisdiction when a non-parent seeks to deprive a mother of custody.

*nal grandmother*"[4] (emphasis supplied). After a hearing the trial court said:

> The next inquiry is what, under such circumstances, would be in the best interest of the child; but, we don't even reach that point under the law because, as I stated, the law does not deprive a natural—that is one of the rights of motherhood which only mothers can have, the natural right to have their offspring. And, unless it can be demonstrated that they are unfit to have it and, unfortunately, the civil law has incorporated that the natural right of the mother to have custody of her offspring. That is the natural and the civil law.
>
> So, under the circumstances, gentlemen, I don't know anything that I can do except give this child to its mother . . .

In its written order, filed January 21, 1977, the court awarded custody to the mother with visitation rights to the father on weekends. Incorporating the earlier trial ruling, the court stated:

> The mother [of a minor child of tender years] has the strongest claim to custody of her child and ordinarily cannot be deprived of that custody except upon a showing that she is unfit or unable to care for the child (*Matter of N.M.S.*, 347 A.2d 924).

The court returned the child to her mother, where she has remained. Subordinated, if not quite disregarded, by the trial judge was what should have been the dominant issue, that is, the child's welfare. Because the theory of a mother's natural right to custody preoccupied the trial judge, to the exclusion of appropriate inquiry, I would reverse and remand for a new trial.

The father appealed and after hearing oral argument, this court ordered sua sponte, by a divided vote, that the case be reheard en banc. I believed the case was readily susceptible of reversal under the authority of *Ross v. Ross,* D.C.App., 339 A.2d 447 (1975); *Lindau v. Lindau,* D.C. App., 286 A.2d 864 (1972); and *Coles v. Coles, supra.* Instead of remanding for a determination of custody in accordance with those decisions, the court majority formulated an en banc issue not raised by appellant: the continuing validity of the tender years presumption.

It seems my misgivings were warranted. After consideration en banc, the majority now inflates the tender years presumption in this jurisdiction to a magnitude unwarranted by our case law. If I may comment parenthetically, it is rather intriguing that an article prominently relied upon in the majority opinion states that this jurisdiction previously abandoned the tender years presumption now being abolished in this case. *See* Roth, *The Tender Years Presumption in Child Custody Disputes,* 15 J. of Family Law 423, 458 & n.123.[5]

It is an established principle in this jurisdiction that child custody disputes between parents are resolved according to the child's best interests.[6] It will be illuminating to turn now to a review of cases in this jurisdiction where the tender years presumption is mentioned.

As the leadoff, *Boone v. Boone,* 80 U.S. App.D.C. 152, 150 F.2d 153 (1945), has been cited for the presumption that small children are better off with their mothers. Although stating that the presumption was entitled to weight, this observation by the court was dicta. Reversing a trial court award of custody to the father (two children ages 9 and 6), the circuit court remanded for decision after an examination

---

4. It would appear from the record that it is primarily the grandmothers who have been rearing the child.

5. *See also,* to the same effect, "*Life with Father,*" Family L. Quarterly, Vol. 11, at 332 n.51 (1978).

6. *See Coles v. Coles, supra; Ross v. Ross, supra* at 448, *quoting Wells v. Wells,* 11 App.D.C.

392 (1897) ("the best interest of the children must be considered as paramount"); *Dorsett v. Dorsett,* D.C.App., 281 A.2d 290, 292 (1971) ("paramount consideration . . . is the welfare of the child"); *Utley v. Utley,* D.C. App., 364 A.2d 1167, 1170 (1976) ("it is without question now that in any child custody case the controlling consideration is the best interest and welfare of the child").

of the parents' qualifications and circumstances by disinterested persons (*e. g.,* probation officers, social workers). As a source for the presumption, *Boone* cited *Sardo v. Villapiano,* 65 App.D.C. 121, 81 F.2d 255 (1935). *Sardo* involved a habeas corpus proceeding brought by the mother to regain custody of a 9-year-old child from the grandfather. Between a *grandfather* and a *mother,* the court held that the mother has a prior claim to custody, unless inconsistent with the child's welfare.

In *Bell v. Leonard,* 102 U.S.App.D.C. 179, 251 F.2d 890 (1958), a habeas corpus proceeding, *the mother* was awarded custody of her 9-year-old illegitimate daughter rather than *a couple who cared for the child.* In the absence of abandonment, consent to custody in another, or unfitness, the court on appeal reunited mother and child, refusing to deprive the mother of custody. The court stressed the importance of the family unit and of maternal love ("the welfare of the child and its best interests are nourished by and inevitably traced to the well-springs of child's life with its mother"). The court concluded, "[i]n short, . . . 'the presumption [is] that small children are better off with their mother . . . ,' as we reaffirmed in *Bartlett v. Bartlett,*[7] . . recognizing the experience of the ages." *Id.* at 184, 251 F.2d at 895.

In *Koppen v. Barrett,* 87 Wash.D.L.Rptr. 887, aff'd, D.C.Mun.App., 154 A.2d 132 (1959), the father of a 3-year-old illegitimate child appealed from an order awarding custody to the mother. The significance of the child's illegitimacy is not clear from the trial court's opinion. Although espousing the best interests test, the court mentioned a mother's preferential claim and natural guardianship. The court indicated that the preferential claim may be lost by contract or forfeited due to conduct affording strong evidence of the mother's lack of natural affection and fitness. Yet

the court concluded that the mother had carried the burden of showing how she might better assist the child's development; in contrast, *the father merely attacked the mother's fitness.* Considering this evidence in light of the child's tender age, the trial court found that the best interests test required that the child remain with the mother.

In the leading case of *Coles v. Coles, supra,* the mother relied on a tender years presumption in her attempt to regain custody of a 4-year-old child. The law requires custody of a child of tender years to be awarded the mother, she contended, where the mother is a fit custodian and there is no finding that her custody would endanger the child. This court affirmed the custody award *to the father,* finding neither abuse of discretion nor error as a matter of law. We there stated that *a showing of the mother's unfitness by the father was not a prerequisite* to an award of custody:

> [T]he law of this jurisdiction does not compel the award of custody of a small child to the mother, although she is a fit custodian, if the trial court on consideration of all the evidence, concludes that the best interests of the child will be served by awarding custody to the father. [*Id.* at 332.]

The court's interpretation of the law in *Coles* was reaffirmed in *Schwier v. Schwier,* D.C.App., 207 A.2d 115 (1965), without mentioning the tender years presumption. This court stated:

> As we have so often said, it is not the adversary right of either parent that is determinative of custody but the welfare of the child that is paramount, and the law of this jurisdiction does not compel the award of a small child to the mother if the best interests of the child will be served by awarding its custody to the father. *Coles v. Coles,* D.C.App., 204

**7.** 94 U.S.App.D.C. 190, 221 F.2d 508 (1954). Interestingly, *Bartlett* mentioned the presumption in a footnote as guidance to the trial court on remand. *Id.* at 194 & n.17, 221 F.2d at 512 & n.17. The court reversed a custody award to the mother, because the trial judge was influ-

enced by an erroneous finding as to the parents' adversary rights, rather than the child's welfare. The court noted, however, that reversal did not indicate a favoritism for either parent.

A.2d 330, 332 (1964). [*Schwier, supra* at 117.]

In *Dorsett v. Dorsett,* D.C.App., 281 A.2d 290 (1971), this court found no abuse of discretion where custody of an 8-year-old son was awarded to the father. As we stated:

The paramount consideration in child custody cases is the welfare of the child. Although . . . there is a presumption in this jurisdiction that children of tender years are better off with their mothers—absent a finding that the mother is unfit—that presumption does not preclude a trial judge from considering evidence pointing to another conclusion. [*Id.* at 292; footnote omitted.]

In upholding the award to the father, this court quoted at length from *Coles v. Coles, supra,* terming *Coles* "the leading case in this jurisdiction." *Dorsett, supra* at 292.

If *Coles, supra,* had not settled the subordinate role of the tender years presumption, this court did so in *Lindau v. Lindau, supra.* There, we said:

The improper legal standards contention is grounded on appellant's assumption that the trial judge "felt that in view of the 'presumption' in favor of maternal custody of small children . . . a husband seeking custody had first to prove the mother's unfitness." We disagree with this assumption. In our view a fair reading of the record indicates that the trial judge's primary concern was the best interest of the child. On several occasions he inquired of witnesses about the child's best interest. Moreover, he interviewed the child in chambers in an effort to gain additional information. The fact that most of the testimony related to the wife's alleged adultery and unfitness was attributable to the way in which the husband chose to present his case, rather than to any misconceptions on the part of the trial judge. The detailed written opinion of the trial judge clearly demonstrates that the best interest of the child was considered. *Although the trial judge mentioned the presumption that small children are better off with their mother, Winter v. Crowley,* 126 U.S.App.D.C. 103, n.13 at 106, 374 F.2d 317, n.13 at 320 (1967), *his decision was based on the correct legal standard, i. e., the present welfare of the child. Winter, supra; Coles v. Coles,* D.C.App., 204 A.2d 330, 331–332 (1964); *Cooley v. Washington,* D.C.Mun.App., 136 A.2d 583, 585 (1957). [*Lindau, supra* at 865; footnote omitted; emphasis added.]

In *Rzeszotarski v. Rzeszotarski,* D.C.App., 296 A.2d 431 (1972), the mother questioned a custody award to the father in light of the tender years presumption. In affirming custody in the father, although the mother was not claimed to be unfit, this court pointed out that the "presumption cannot be viewed as controlling but *merely* as a usually persuasive factor *relating to the issue of custody.*" (*Id.* at 439; emphasis added.) The court went on to say, "The record in the case before us shows extensive evidence presented by both parties regarding a determination of what would be in the best interest of the child." *Id.*

In *Monacelli v. Monacelli,* D.C.App., 296 A.2d 445 (1972), this court refused to disturb a custody award to the father absent a showing of changed circumstances. The court stated that the controlling consideration is always the welfare of the children even though courts will, as a general rule, indulge the presumption that maternal custody best serves the interests of young children. This court made plain that custody cases are no place to consider adversary rights of the parents.[8]

8. In *Winter v. Crowley,* 126 U.S.App.D.C. 103, 374 F.2d 317 (1967), the circuit court held that a change in circumstances considered by the earlier court as a basis for the custody decree requires the court to hear testimony and determine anew the question of custody. The court suggested that circumstances relevant to the child's welfare would include the nonconclusive presumption that small children are better off with their mother. [*Id.* at 106 n.13, 374 F.2d at 320 n.13.] The court there stated, also, that "[t]he welfare of minors is not to be determined by . . . adversary rights as between the parents or other custodians." [*Id.* at 106, 374 F.2d at 320.]

Although "aware" of the tender years presumption, this court in *Ross v. Ross, supra,* made a passing reference to the presumption and then, still again terming *Coles* a leading case on the subject, quoted from that decision:

> "[T]he law of this jurisdiction *does not compel the award of custody of a small child to the mother, although she is a fit custodian,* if the trial court on consideration of all the evidence, concludes that the best interests of the child will be served by awarding custody to the father." [*Ross, supra* at 448–49, *quoting Coles, supra* at 332; emphasis added.]

We then proceeded to affirm the trial court's award of custody to the father.

Applying the best interests test to a custody dispute between foster parents and the natural mother, this court in *In re N.M.S.,* D.C.App., 347 A.2d 924 (1975), left the 9-year-old child *in the foster home.* This being a dispute between a mother and third persons, the court agreed that a mother, undoubtedly, has the strongest claim to custody of her child and ordinarily cannot be deprived of custody without a showing of unfitness. This case was distinguished, however, as an attempt to regain—not retain—custody; the mother had committed the child to the welfare division when four days old.

In a recent case, *Moore v. Moore,* D.C. App., 391 A.2d 762 (1978), custody of a 5-year-old girl was awarded the mother. We disagreed with the father's contention that the trial court improperly accorded presumptive significance to the factor of "motherhood." Inclusion of the fact that the child had lived with the mother for most of her life, in the court's view, did not indicate that maternity was given presumptive significance. Because the trial court did not invoke the presumption, the issue of its propriety was not reached.

Although mentioned in several cases, the tender years presumption has rarely formed the basis of a decision in this court. As this review of our cases shows, if there is one thing that is evident, it is that custody does not go to the mother as a matter of law if she is a fit custodian. The trial judge retains broad discretion in defining the child's best interest and in determining what criteria may apply; and, as we have stated, we will abide by the trial court's determination on custody "as the law will only dictate reversal upon a finding of manifest abuse of discretion." *Ross v. Ross, supra* at 449, quoting from *Rzeszotarski v. Rzeszotarski, supra* at 440.

Whatever confusion exists may be due in large part to the blurring of distinctions between proceedings which terminate maternal rights in favor of a third party and custody disputes between parents. I note, for example, that *In re N.M.S., supra,* is cited by the majority opinion. Yet, that case did not involve a custody dispute between parents, but between a parent and foster parents. It is in those cases where a nonparent seeks custody that the mother's preferential claim will be quite a telling factor. Indeed the fact of motherhood has *presumptive* significance in those situations because the nonparent must introduce rebuttal evidence of the mother's unfitness. *See, e. g., Johnson v. Lloyd,* D.C.App., 211 A.2d 764 (1965). The ordinary preference of the mother over a third party "represents no new principle of law, but merely reflects the wisdom of human experience that children ordinarily will be best cared for by those bound to them by the ties of nature." *Davis v. Jurney,* D.C.Mun.App., 145 A.2d 846, 849 (1958). *See also* D.C.Code 1973, § 21–101.

It is quite evident to me that the law on child custody as applied in this jurisdiction is essentially as stated in our "leading case" of *Coles v. Coles, supra.* That decision leaves no room for the "straw man" set up by the majority opinion. It requires that there be a balancing approach as between the two parents.[9] If a trial judge applies a

---

9. *See, e. g., Benvenuto v. Benvenuto,* 105 Wash.D.L.Rptr. 1033 (June 14, 1977), where the trial court stated in its findings:

> A custody determination is more than an evaluation of love and affection. It is a composite, *inter alia,* of a totality of information

maternal preference *as a presumption of law*, it is contrary to the law of this jurisdiction under long standing decisions of this court.[10] As often as not, when alluding to the "tender years presumption" this court has done so in affirming a custody award to the father.[11]

C. The term "presumption" often is used loosely. According to a leading text writer, "the description of a presumption as a rule that, at a minimum, shifts the burden of producing evidence is to be preferred." McCormick, Evidence § 342 at 803. Wigmore puts it this way:

> So long as the law attaches no legal consequences in the way of a duty upon the opponent to come forward with contrary evidence, there is no propriety in applying the term "presumption" to such facts, however great their probative significance. [Wigmore on Evidence, Vol. IX, § 2491, at 288.]

Thus, the essence of a presumption is not the probative value attached to specific facts or the inferences drawn, but the procedural consequences. *Id.*

What is often referred to as a "presumption of fact" should properly be called an inference. Actually, "the distinction between presumptions 'of law' and presumptions 'of fact' is in truth the difference between things that are in reality presumptions . . . and things that are not presumptions at all." *Id.* at 288. Presumptions of fact or inferences, as a matter of reasoning, refer to the probative value of an evidentiary fact. The inference arises

from the commonly accepted experiences of mankind and the conclusion which reasonable men would draw from experiences. *See, e. g., Manchester v. Dugan*, 247 A.2d 827, 829 (Me.1968) ("[a]n inference is a deduction as to the existence of a fact which human experience teaches us can reasonably and logically be drawn from proof of other facts").

If the "tender years presumption" as applied in this jurisdiction is a presumption at all, it is a presumption of fact. The review of our case law demonstrates this. And as Wigmore puts it, a presumption of fact is not really a presumption at all; it is an inference. Whatever else it may have been in years past, our decisions show the tender years "presumption" in this jurisdiction is a misnomer.

D. My reading of this court's decisions leads me to conclude the inference that ordinarily a child of tender years is better off in the custody of the mother ordinarily operates in the trial court in this limited way: if both parties seeking divorce appear to be reasonably stable, conscientious parents with somewhat the same background, and, let us say there is a three-year-old girl child involved, the court would probably there infer the small child is better off being reared by the mother. If on the other hand it appears, for example, the mother is markedly self-centered and not as stable nor as parentally responsible as the father, then in all likelihood the inference never comes into play in deciding the custody issue in favor of the father. This is how,

concerning also the personal safety of a child, the morals and health of the child, the happiness of the youngster, where her bastions of security exist, where she derives most of her essential comfort and needs, where she has the greatest stability, what home environments are offered, what are the parenting capabilities or willingness to provide quality care, what has prologue shown us. Essentially, this decision-making must be an unbiased consideration of the best interests of the child based on her individual characteristics and the relationships of the parents and the child.

.     .     .     .     .

The Court finds that, on balance, and in consideration of all factors, the mother would

be the more appropriate custodian and that the best interests of the child require that custody be so reposed. [*Id.* at 1039.]

In *Bergstrom v. Bergstrom*, D.C.Super.Ct. (No. 3312–77, Feb. 15, 1978, unpublished findings of fact, conclusions of law), the court's task was there described as determining "between two good parents how the custody of the child must be arranged based upon the dictates of the best interests of the child."

10. *E. g., Coles v. Coles, supra*, and its progeny.

11. *See, e. g., Coles v. Coles, supra; Dorsett v. Dorsett, supra; Monacelli v. Monacelli, supra; Rzeszotarski v. Rzeszotarski, supra.*

as I read it, judges are proceeding generally in the real world of the trial court in this jurisdiction. It seems a sensible approach to me, and accords with reality. I do not think it should be necessary to explain why an infant girl child, for example, is better off being reared through early childhood by a loving, responsible, diligent mother than a loving responsible, diligent father.[12] I agree with the majority's view that "the ability of a person to provide 'mothering' *does not necessarily* correspond to the gender of the parent . . . ." (emphasis added). But that misses the point. It is not a question of what *necessarily* occurs.[13]

This court holds here that the "trial courts shall decide the delicate question of what is the child's best interests solely by reference to the facts of the particular case without resort to the crutch of a presumption in favor of either party. *See* the District of Columbia Marriage and Divorce Act, *supra* § 108(d) and § 109 (amending D.C.Code 1973, §§ 16–911(4) and –914)."[14] If my analysis of our case law as well as the law on the subject of presumptions is correct, we have neither a "presumption" nor a "crutch." It would have been a simple matter for the hearing division in this case to issue an opinion reaffirming *Coles, supra*, and its progeny and, to the extent felt necessary, remove any lingering uncertainty—if any there be—on how the trial court

should approach the resolution of custody disputes.

I do not by any means read the majority opinion to prohibit a trial judge in a custody dispute involving a child of tender years from taking into consideration, while balancing all factors, realities such as those expressed by learned amicus curiae appointed by the court in this case:

A new-born baby and a young child have certain needs of physical warmth, of cuddling, of affection, to say nothing of food, which it can best receive from its mother. These needs diminish as the child grows older, and may disappear at age 7 or thereabouts. But, assuming both parents to be equally well motivated, it seems to your writer that the mother is better endowed by nature to provide for these basic needs. There are, after all, certain biological and physiological differences between male and female which will withstand all assaults of modern day mores. [Brief of Amicus Curiae, *Charles H. Mayer, Esq.*, filed June 2, 1978.]

Though I do not read the court's opinion as prohibiting earthiness by a trial judge in assessing and balancing all the evidence, I might add a few words of clarification to avoid misunderstanding at the trial level. Because trial judges faced with custody decisions will look to this case for guidance, I

---

**12.** If it were to be that all things being anywhere near equal, a father's superior financial position, an *ordinary state of affairs*, is considered a controlling consideration, then we will have taken a giant step back toward the last century when the father as the dominant figure almost automatically got custody of the children.

**13.** Where custody of small children is granted to the father, it is not unlikely that he will either remarry, or if affordable, employ someone to care for a home. The chances are the child-caring is in that fashion resumed and the father's "nurturing" recedes in the actual routine of day-to-day living. If there is a remarriage, the "mothering" would likely be done not by the father but by the child's stepmother instead of the mother.

**14.** In an interesting analysis of the 1977 Marriage and Divorce Act the authors concluded:

The Council specifically enumerated the criteria to be considered in custody and property distribution determinations. We believe, as did the bar groups, that these criteria should have been omitted in order to give more flexibility to the courts in the future in adapting the relevant factors to reflect the changing values in society. Nevertheless, it is clear that neither the custody nor property-distribution criteria add anything significantly new to the law, and, at this point, *serve as nothing more than a codification of the principles developed in the case law. These changes will have little practical effect on either custody* or property division cases. [Green & Long, *The Real and Illusory Changes of the 1977 Marriage and Divorce Act*, Cath.U.L.Rev., Vol. 27, No. 3 (Spring 1978); emphasis added.]

think it unwise to even appear to be discouraging a realistic approach.

This decision does not change what is fundamental to our law in deciding custody disputes. The majority opinion seeks to abolish a rule that did not actually exist in this jurisdiction as perceived by the majority. The trial judge retains broad discretion in defining the child's best interests and in applying appropriate criteria. We have often said that we must abide by the trial court's determination on custody "as the law will only dictate reversal upon a finding of manifest abuse of discretion." *E. g., Ross v. Ross, supra* at 449, quoting from *Rzeszotarski v. Rzeszotarski, supra* at 440. As a practical matter, the majority opinion will have little or no effect on the future resolution of custody disputes in the real world of the trial court—or so it seems to me.